In The

# United States Court of Appeals
### For The Federal Circuit

# IN RE:  NINTENDO OF AMERICA, INC., MICRO ELECTRONICS, INC., HASTINGS ENTERTAINMENT, INC., GAMESTOP CORP., BEST BUY STORES, L.P., BESTBUY.COM, LLC, KMART CORPORATION, TARGET CORPORATION, TOYS 'R' US-DELAWARE, INC.,

*Petitioners.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 2:13-CV-32, JUDGE J. RODNEY GILSTRAP.**

––––––––––––

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

––––––––––––

James E. Davis
FERGUSON, BRASWELL & FRASER, PC
2500 Dallas Parkway, Suite 260
Plano, Texas   75093
(972) 378-9111

Casey L. Griffith
Kelly J. Kubasta
KLEMCHUK KUBASTA LLP
8150 North Central Expressway, 10th Floor
Dallas, Texas  75206
(214) 367-6000

*Counsel for Respondent*

*Counsel for Respondent*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

In Re Nintendo of America Inc.
Misc. No. 14-132

**CERTIFICATE OF INTEREST**

I, James E. Davis, Counsel for the <u>Respondent, Secure Axcess, LLC,</u> certify the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:   Secure Axcess, LLC

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  n/a

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:  None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

The Roth Law Firm: Carl R. Roth, Brendan Clay Roth, Amanda Aline Abraham

Klemchuk Kubasta LLP:  Kelly James Kubasta, Casey Lee Griffith

Ferguson, Braswell & Fraser, PC:  James Ellis Davis

Dated: April 22, 2014

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................1

RELIEF SOUGHT ..............................................................................3

ISSUES PRESENTED .........................................................................4

COUNTERSTATEMENT OF FACTS ..................................................4

    I.    This case was filed on January 18, 2013, the parties have invested substantial time to prepare their claims and defenses, and trial is set for November 10, 2014 ...................................4

    II.    The Eastern District of Texas is a logical and appropriate venue for this case ...........................................................................5

    III.    The defendants filed a motion to sever and transfer claims against Nintendo and to stay claims against the Retailer Defendants ...........................................................................7

    IV.    On March 7, 2014, the district court granted the defendants' motion to stay Secure Axcess's claims against the Retailer Defendants, bifurcated adjudication of liability issues and damages issues, denied the defendants' motion to sever, and denied the defendants' motion to transfer ...........................8

STANDARD OF REVIEW ................................................................13

REASONS WHY MANDAMUS SHOULD NOT ISSUE ....................13

    I.    The district court's decision does not eliminate the "customer suit exception" but rather, demonstrates it should be applied, consistent with its history and rationale, only in cases where it will streamline proceedings and will prevent procedural gamesmanship ...................................................................13

i

II.    The district court's recognition of Secure Axcess's right to prove and to recover damages from all defendants, rather than merely from Nintendo, in connection with its analysis of the applicability of the "customer suit exception" was correct, as a matter of law .......................................................................................21

    A.    The district court properly recognized Secure Axcess's claims against the Retailer Defendants are not merely "peripheral" to the claim against Nintendo...............................21

    B.    The district court properly recognized adjudication of the infringement claim against Nintendo could not, under any circumstances, resolve the issues of damages in connection with the claims against the Retailer Defendants .............................................................................26

III.   Having determined the claims against the Retailer Defendants should not be severed, the district court had no choice but to deny the motion to transfer, notwithstanding whether or not the Western District of Washington is a clearly more convenient venue for Nintendo .............................................................................28

CONCLUSION .....................................................................................30

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Codex Corp. v. Milgo Elec. Corp.*,
 553 F.2d 735 (1st Cir. 1977) .....................................................................16, 17

*Corry v. CFM Majestic, Inc.*,
 16 F. Supp. 2d 660 (E.D. Va. 1998) .......................................................9, 14, 29

*Deere & Co. v. Int'l Harvester Co.*,
 710 F.2d 1551 (Fed. Cir. 1983) ......................................................................24

*Fujifilm Corporation v. Benun*,
 605 F.3d 1366 (Fed. Cir. 2010) ......................................................................23

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970) ....................................................23, 24, 27

*In re Nintendo Co., Ltd.*,
 544 F. App'x 934 (Fed. Cir. 2013) ..................................................................29

*In re Toyota Motor Corp.*,
 2014 WL 1316595 (Fed. Cir. Apr. 3, 2014) ..............................................29, 30

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
 274 F.3d 1371 (Fed. Cir. 2001) ......................................................................23

*Katz v. Lear Siegler, Inc.*,
 909 F.2d 1459 (Fed. Cir. 1990) ......................................................................17

*Koh v. Microtek Intern., Inc.*,
 250 F. Supp. 2d 627 (E.D. Va. 2003) .........................................................14, 29

*L.G. Electronics, Inc. v. First Int'l Computer, Inc.*,
 138 F. Supp. 2d 574 (D.N.J. 2001) ............................................................19, 20

*Oplus Technologies*, *Ltd. v. Sears Holding Corp.*,
No. 11-CV-9029,
2012 WL 2400478 (N.D. Ill. June 15, 2012).................................................19

*Shifferaw v. Emson USA, et al.*,
2010 WL 1064380 (E.D. Tex. Mar. 18, 2010)...........................10, 26, 28, 29

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
2005 WL 2415960 (N.D. Tex. Sept. 30, 2005).......................................14, 29

**STATUTES**

28 U.S.C. § 1404(a) .........................................................................*passim*

35 U.S.C. § 271(a) ....................................................................................1

**OTHER AUTHORITY**

Patent Transparency and Improvements Act of 2013 (S. 1720)..............................12

# INTRODUCTION

Faced with a motion to stay claims against eleven (11) retailers[1] (the "Retailer Defendants") and to sever and to transfer a claim against Nintendo of America, Inc. ("Nintendo") to a separate court, the district court crafted a well-reasoned, balanced, and fair ruling that maximizes efficiency and convenience for *all* the parties (rather than merely Nintendo), preserves limited federal judicial resources, and preserves the right of the plaintiff, Secure Axcess, LLC ("Secure Axcess") to pursue its patent infringement claims (including damages) against all infringers, including retailers, as expressly authorized by 35 U.S.C. § 271(a), in a single court.  Rather than to sever Secure Axcess's patent infringement claims against joint tortfeasors into separate cases, as requested by Nintendo, or to allow the case to proceed in its original posture, as requested by Secure Axcess, the district court crafted an elegant compromise, *viz.*, it denied the motion to sever, bifurcated the issues of liability and damages, and stayed Secure Axcess's claims against the retailers pending resolution of the liability issues.  Clearly, the trial court's order with respect to Nintendo's motion to sever was a proper exercise of its inherent discretion to manage a case.  After denying Nintendo's motion to

---

[1] The Retailer Defendants were Micro Electronics, Inc., Hastings Entertainment, Inc., Game Stop Corporation, Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, Best Buy Stores, L.P., Bestbuy.com, LLC, K Mart Corporation, Target Corporation, Toys "R" US Delaware, Inc., and Amazon.com, LLC. Appendix In Support Of Petition For Writ Of Mandamus (hereinafter cited only by page number). A15.

sever, the district court noted the case could not have been brought in a federal court in Washington and therefore, concluded "a transfer of the entire action would clearly be improper."

The district court's decision does not run counter to judicial precedent that vests trial courts with *discretion* to sever and to stay infringement claims against customers or retailers and to transfer an infringement claim against a manufacturer to another venue, when appropriate. Indeed, the district court acknowledged the "customer suit exception" and the rationale behind it, *viz.*, "to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of accentuating the burdens of the trial upon a defendant who would otherwise have been entitled to a § 1404(a) transfer."

The district court's decision in this case does not create, as Nintendo suggests, "a loophole permitting plaintiffs to circumvent the customer-suit exception." Rather, it merely rejects the Petitioners' proposed simplistic, inflexible approach that would *require* a trial court (and divest it of its discretion) to sever and to stay infringement claims against retailers in *every* case (by merely characterizing them as "peripheral") without regard to the particular facts and circumstances presented by the dispute. The district court's decision and methodology does not undermine the customer suit exception but rather establishes

it is a doctrine to be applied in some *but not all* cases by trial courts using their

sound judicial *discretion* based on the particular circumstances of each dispute.

The *crux* of the Petitioners' argument in support of their petition for a writ of

mandamus is that trial courts, in general (and the district court in this case) lack

either the wherewithal or the inherent fairness to use sound judicial discretion to

rule effectively and fairly on motions to sever and transfer in connection with

patent infringement cases.  Thus, the Petitioners asks this Court to establish a

simple, bright line rule that a trial court *must* grant a manufacturer's motion to

sever and to stay claims against retailers in *every* case where such orders may

facilitate a manufacturer's motion to transfer under Section 1404(a).  Such an

inflexible, "one size fits all" rule would elevate a manufacturer-defendant's

interests above the collective interests of all parties in every dispute, regardless of

the totality of facts and circumstances presented, and moreover, would be an

unprecedented and unwarranted emasculation of the inherent authority of trial

courts to manage and to administer their cases.  Thus, mandamus should not issue.

## RELIEF SOUGHT

Secure Axcess respectfully requests the Court to deny the petition for a writ

of mandamus.

## ISSUES PRESENTED

1.     Did the district court clearly abuse its discretion by concluding the claims against the Retailer Defendants are not merely peripheral because the measure of Secure Axcess's damages in connection with such claims may be higher than its measure of damages in connection with its claim against Nintendo?

2.     Did the district court clearly abuse its discretion by concluding the adjudication of Secure Axcess's claim of infringement against Nintendo would not potentially resolve the damages issues in connection with Secure Axcess's claims against the Retailer Defendants?

3.     Did the district court clearly abuse its discretion when, after having denied the defendants' motion to sever the claims against the Retailer Defendants, it concluded transfer of the entire action would be improper?

## COUNTERSTATEMENT OF FACTS

**I.     This case was filed on January 18, 2013, the parties have invested substantial time to prepare their claims and defenses, and trial is set for November 10, 2014.**

On January 18, 2013, Secure Axcess filed its complaint and asserted claims of patent infringement against Nintendo and the Retailer Defendants based on their sales of Nintendo's DS line of personal gaming systems (the "Accused Products"). A15-32.  The Accused Products are used to play video games that are downloaded via the Internet or from game cartridges.  *Id.*  The video games are created,

designed, and manufactured by or on behalf of Nintendo and by independent software developers and publishers.  A338-347.  The video games are offered for sale and sold by retailers, including the Retailer Defendants.  A295-337.  The Retailer Defendants sometimes sell Accused Products and games in bundles.  *Id.*

The Defendants filed answers on April 5, 2013. A33.  None of the defendants objected to this Court's jurisdiction over them, nor did they object to this Court as a proper venue.  *Id.*

Over the past 15 months, the parties have exchanged initial disclosures, including relevant documents, filed infringement contentions and related disclosures, filed invalidity contentions and related disclosures, exchanged proposed claim terms for construction, and filed a joint claim construction and prehearing statement.  Also, on April 17, 2014, Secure Axcess filed its opening claim construction brief.  The claim construction hearing in this case is set for June 4, 2014. A530-31.  Trial is set to commence on November 10, 2014.

## II.    The Eastern District of Texas is a logical and appropriate venue for this case.

The United States District Court for the Eastern District of Texas is the home venue of Secure Axcess.  Secure Axcess is a Texas limited liability company.  A241-43.  Secure Axcess owns a portfolio of patents, which it monetizes both through contract and litigation.  Since its inception in August 2010, Secure Axcess has filed four (4) cases in its home forum, the United States District

Court for the Eastern District of Texas, to enforce its patents.  Two of these cases involve the '309 Patent—this case and the action styled *Secure Axcess*, *LLC v. Accell Corp.*, *et al.*, No. 13-cv-00289 (E.D. Tex. April 22, 2013), which also is pending in this Court.  *Id.*[2]

Since October 2010, (over two years prior to the date on which this case was filed) Secure Axcess has maintained its principal place of business at 555 Republic Drive, Suite 200, Plano, Texas.  *Id.*  Secure Axcess occupies physical office space, maintains a telephone line, maintains physical files, and receives mail at this address.  The officers of Secure Axcess have business cards that list this office as the business address for Secure Axcess.  Secure Axcess has hired employees who have worked out of its office in Plano, Texas.  *Id.*

The United States District Court for the Eastern District of Texas is a proper venue for Secure Axcess's claims against the defendants.  The Retailer Defendants market and sell the Accused Products throughout the United States, including the Eastern District of Texas.  A295-337.  The Retailer Defendants also sell numerous accessories, including video games, which are designed specifically for use with the Accused Products.  *Id.*  The Retailer Defendants frequently bundle the Accused Products with accessories, including video games.  These product bundles are

---

[2] By order dated August 2, 2013, the district court combined these two cases for pretrial purposes.

marketed and sold to consumers throughout the United States and the Eastern

District of Texas.  *Id.*

### III.    The defendants filed a motion to sever and transfer claims against Nintendo and to stay claims against the Retailer Defendants.

On June 18, 2013, Nintendo and the Retailer Defendants filed a joint motion

to sever and to transfer the claims against Nintendo to the United States District

Court for the Western District of Washington (the "Western District of

Washington") and to stay the claims against the Retailer Defendants.  A46-217.  In

support of the motion, Nintendo argued it, rather than the Retailer Defendants, is

best suited to defend a patent infringement claim against the Accused Products,

that the Retailer Defendants are merely "peripheral" to Secure Axcess's patent

infringement claims, that resolution of Secure Axcess's claims against Nintendo

potentially will resolve the claims against the Retailer Defendants[3], and that the

Western District of Washington is a more convenient forum for Secure Axcess's

claim against Nintendo.  *Id.*

Secure Axcess filed its response to the defendants' joint motion on July 26,

2013.  A218-348.  Secure Axcess argued the motion should be denied in its

entirety because the relief sought by Nintendo would not promote efficiency and

judicial economy but rather, would create piecemeal litigation in separate forums

---

[3] The retailer defendants agreed they would be bound by the rulings of the Western District of Washington in connection with the adjudication of Secure Axcess's claim against Nintendo.  A191-92.

regarding the same plaintiff, the same patent, the same claims, and the same Accused Products. *Id.* Secure Axcess disputed Nintendo's contention its claims against the Retailer Defendants are merely "peripheral" and argued the claims are independently significant because they will give rise to different and likely higher damages than the claim against Nintendo. *Id.* Secure Axcess also disputed Nintendo's contention adjudication of the severed claim against it would dispose of the claims against the Retailer Defendants because a judgment against Nintendo from the Western District of Washington would not establish the damages for each Retailer Defendant. *Id.* Finally, Secure Axcess disputed Nintendo's assertion the Western District of Washington is a clearly more convenient venue than the United States District Court for the Eastern District of Texas. *Id.*

**IV.  On March 7, 2014, the district court granted the defendants' motion to stay Secure Axcess's claims against the Retailer Defendants, bifurcated adjudication of liability issues and damages issues, denied the defendants' motion to sever, and denied the defendants' motion to transfer.**

On February 25, 2014, the district court heard the arguments of counsel in connection with the defendants' motion. On March 7, 2014, the district court filed its order in which it granted the defendants' motion to stay claims against the retailers, bifurcated the issues of liability and damages, denied the motion to sever and denied the defendants' motion to transfer venue. A1-14.

The district court recognized judicial precedent for application of the "customer suit exception" to sever and to transfer claims against manufacturers from claims against retailers under appropriate circumstances.  A4-5.  The district court expressly stated its agreement with the rationale and purpose of the "customer suit exception" but noted its "application must be tempered when severance of the manufacturer is made primarily to facilitate transfer to a forum more convenient for the manufacturer while the case against the remaining defendants, who are outside the jurisdictional reach of that forum, is stayed and left in the hands of the transferor court."  A6.

The district court noted the rationale for severance and transfer of claims against manufacturers is "to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of accentuating the burdens of trial upon a defendant who would otherwise have been entitled to a § 1404(a) transfer."  A7, quoting *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 664 (E.D. Va. 1998).  Thus, the district court concluded severance and transfer of manufacturers should not be considered the general rule but rather an exceptional remedy "for that small subset of cases where an attempt to manipulate venue is clear."  *Id*.  The district court found this is not such a case, expressly stating "Defendants have not, nor can they reasonably allege, that the

Plaintiff added the Retailer Defendants in this case purely to manipulate venue."
*Id.*

The district court also noted severance and transfer of a claim against a manufacturer may not simplify or streamline issues in a patent infringement case. Although core issues of liability may be resolved by adjudication of claims against the manufacturer, only, determination of damages is "necessarily a defendant-specific inquiry." A7. The district court recognized "if…the patentee returns to lift the stay against the retailers in the transferor court, the laudable goal of judicial efficiency and overall economy is significantly frustrated because now the same suit must be adjudicated in two different forums, if only on the damages issue." A8.

In evaluating Nintendo's request to sever, transfer, and stay, the district noted "courts have typically considered three factors: (1) whether the claims against the retailers are peripheral to the claims against the manufacturer; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims." A8, quoting *Shifferaw v. Emson USA*, *et al.*, 2010 WL 1064380 at *4 (E.D. Tex. Mar. 18, 2010). The district court recognized the first two factors pertain to the propriety of severance, while the third factor pertains to the propriety of transfer. The district court also noted other courts routinely have "treated the

third prong as a separate transfer analysis as to the severed defendant after severance is found proper under factors (1) and (2)."  A9.

With respect to whether Secure Axcess's claims against the retailers are merely "peripheral" to its claims against Nintendo, the district court acknowledged Nintendo is the sole manufacturer in the United States of the Accused Products, the Retailer Defendants have little to offer as evidence in connection with technology of the Accused Products, and therefore, Secure Axcess's claims of infringement and validity of its patent against the Retailer Defendants are peripheral to its claim against Nintendo.  A9.  On the other hand, the district court recognized "the same logic cannot be extended to the calculation of damages."  *Id.*  The district court acknowledged Secure Axcess contends its measure of damages in connection with its claims against the Retailer Defendants is likely to be higher than its measure of damages against Nintendo due to higher retail prices and the Retailer Defendants' practice of bundling other products for sale with the Accused Products and concluded "Plaintiff should have the opportunity to pursue damages from either Nintendo or the Retailer Defendants or both, as it clearly intended by filing this single suit, rather than have those options directly or indirectly foreclosed through the relief Nintendo has requested."  A9-10.  For these reasons, the district court found "that as to the issue of damages, the claims against the Retailer Defendants are *not* peripheral to those of Nintendo."  A10.

11

With respect to whether adjudication of a severed claim against Nintendo would potentially dispose of the claims against the Retailer Defendants, the district court acknowledged the issues of infringement and validity are common to Nintendo and the Retailer Defendants and therefore, "the Retailer Defendants could only be found liable if the patent infringement claims against Nintendo are resolved in [Secure Axcess]'s favor." A11. On the other hand, the district court also noted "if the patent is adjudicated as both valid and infringed, then [Secure Axcess] should be allowed to pursue Nintendo and the Retailer Defendants simultaneously for an award of damages, even though it may only collect once." *Id.* Thus, the district court concluded adjudication of a severed claim against Nintendo would not potentially dispose of damages in connection with claims against the Retailer Defendants. *Id.*

Considering the traditional application of the customer suit exception, the parties' arguments, and the facts of this case, the district court concluded "rather than engaging in the process of severing, transferring, and then staying the case, the interests of preventing the waste of both time and resources can also be achieved by permitting Nintendo to proceed alone in this Court on infringement and validity while the Retailer Defendants are stayed…." *Id.* The district court

12

found "proceeding in this manner is a fair and equitable solution to otherwise unnecessary piecemeal litigation of one case across multiple district courts."[4]  A12.

Having determined severance of the claims against Nintendo from the claims against the Retailer Defendants would be inappropriate, the district court was not required to consider whether the Western District of Washington is a clearly more convenient venue for a cased against Nintendo.  Clearly, in the absence of severance, the entire action cannot be transferred to the Western District of Washington.  A13.

## STANDARD OF REVIEW

Respondent concurs with Petitioners' statement of the standard of review.

## REASONS WHY MANDAMUS SHOULD NOT ISSUE

I.    **The district court's decision does not eliminate the "customer suit exception" but rather, demonstrates it should be applied, consistent with its history and rationale, only in cases where it will streamline proceedings and will prevent procedural gamesmanship.**

The district court expressly acknowledged the history and purpose of the "customer suit exception" and the fact it "has more recently been applied in multi-defendant actions where both the manufacturer and retailer are defendants in the

---

[4] The district court gave considerable thought to the solution it crafted, going so far as to review, *sua sponte*, the pending "Patent Transparency and Improvements Act of 2013" (S. 1720) and concluding its ruling in this case was consistent with the proposed legislation's "Customer Stay" provision.  The trial court further noted its decision was based "not only [upon] the briefing and argument but also "nuances of credibility and intent," which can be gained only from the position of a trial court. A12.

same case." A4-5. The district court recognized that in such actions the "customer suit exception" has been "used as a tool to facilitate transfer of the manufacturer defendant to a venue where suit against the retailer defendants could not have been originally brought." A5, *citing Toshiba Corp. v. Hynix Semiconductor, Inc.*, 2005 WL 2415960 at *5 (N.D. Tex. Sept. 30, 2005) ("That the Court lacks power to transfer the claims against Millenium and Nova to the Northern District of California does not mean that transfer of the claims against the Hynix Defendants would be improper"); *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003) (ordered severance to facilitate transfer to CDCA when it found retailer defendant MCSC is not subject to *in personam* jurisdiction in California); *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 664 (E.D. Va. 1998) ("Given that the action as a whole cannot be transferred to the Northern District of Indiana, the question then presented is whether plaintiff's claim against Thulman may be severed from the claims against the FM entities so that the latter claims may be transferred to Indiana"). The district court identified a two-fold rationale for severance of claims against retailers to facilitate transfer of a claim against a manufacturer: (i) to simplify or streamline all the issues by forcing a plaintiff to prosecute its infringement claim against the manufacturer, which is best suited to defend such claims; and (ii) "'to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole

purpose of accentuating the burdens of trial upon a defendant who would otherwise have been entitled to a § 1404(a) transfer.'"  A6-7, *quoting Corry*, 16 F. Supp. 2d at 664.

Although the district court recognized, understood, and even stated its agreement with the "customer suit exception," it recognized the exception is not to be applied indiscriminately to every case in which a manufacturer seeks to sever and transfer patent infringement claims to a forum that is more convenient for the manufacturer.  Rather, the district court recognized that to promote fairness for all parties (rather than Nintendo, only) and to maximize judicial efficiency, it was necessary to consider many factors, including: (i) the Retailer Defendants are not merely customers of Nintendo but also retailers that sell the Accused Products; A2; (ii) Secure Axcess seeks to recover damages in the form of a reasonable royalty from either Nintendo, the Retailer Defendants, or both; *Id.*; (iii) a reasonable royalty for the sale of Accused Products may be different and likely higher as measured in connection with infringement claims against the Retailer Defendants, especially where, as here, there is evidence the Retailer Defendants benefit from convoyed sales of other products in connection with their sales of the Accused Products; *Id.*; (iv) to require Secure Axcess to devote significant time and money to litigate a patent infringement case in the Western District of Washington against Nintendo, only, and then be forced to return to the district court in order to prove

15

its damages against the Retailer Defendants effectively would coerce Secure

Axcess to abandon its damages claims against the Retailer Defendants; A8; (v) to

require adjudication of this patent infringement case in two different forums would

frustrate "the laudable goal of judicial efficiency and overall economy"; *Id.*; and

(vi) there is no evidence (nor even any allegation from Nintendo) that Secure

Axcess sued the Retailer Defendants purely to manipulate venue.  A7.  After due

consideration of all these factors, the history and rationale of the "customer suit

exception," and the parties' arguments (including nuances of credibility and

intent), the district court determined, in an exercise of its sound judicial discretion,

not to engage "in the process of severing, transferring, and then staying the case."

A11.  Rather, the district court determined "the interests of preventing waste of

both time and resources can…be achieved by permitting Nintendo to proceed alone

in this Court on infringement and validity while the Retailer Defendants are stayed,

conditioned upon their consent to be bound by Nintendo's judgment."  A11-12.

Contrary to Nintendo's protestations, the district court's recognition of

Secure Axcess's right to seek damages, in the form of reasonable royalties, from

the Retailer Defendants is not inconsistent with the history or rationale of the

"customer suit exception."  For example, in *Codex Corp. v. Milgo Elec. Corp.*, 553

F.2d 735 (1st Cir. 1977), a case on which Nintendo heavily relies in support of its

petition, the court stated the "customer suit exception" should not be an inflexible

rule but rather "*a rebuttable presumption* that a manufacturer's declaratory judgment action…should take precedence over a mere customer action in a jurisdiction in which the manufacturer could not be sued." *Codex Corp.*, 553 F.2d at 738 (emphasis added).  The court also expressly recognized a plaintiff's right to recover damages against a customer is a factor that might rebut the presumption in favor of a stay, stating "there may be situations, due to *prospects of recovery of damages* or other reasons, in which the patentee has a special interest in proceeding against a customer himself, rather than solely as a shadow of the manufacturer, and therefore less weight should be given to the manufacturer's forum." *Codex Corp.*, 553 F.2d at 738 n. 6 (emphasis added).  Similarly, in *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990), another case cited by the Petitioners, this Court affirmed a district court's application of the "customer suit exception" to stay a patent infringement claim against a manufacturer's customers but did so, in part, because the appellant failed to substantiate his claim the defendants in the stayed action were "not simply customers…but dealers in infringing goods of several manufacturers."  *Katz*, 909 F.2d at 1464.

The district court's decision in this case does not create, as Nintendo suggests, "a retailer exemption that would swallow the customer-suit exception." Petition for Writ of Mandamus ("Petition"), p. 17.  To the contrary, the district court's decision merely stands for the proposition a trial court can and should

exercise sound judicial discretion to resolve motions to sever, motions to stay, and motions to transfer, based on the unique facts presented by each case in a manner that promotes fairness for all parties and preserves scarce judicial resources. Nintendo expresses its fear that the reasoning behind the district court's ruling will allow "any court [to] retain core claims instead of severing and transferring to a more convenient venue based on the theoretical and remote possibility that a plaintiff could someday choose to seek damages against other defendants than the manufacturer." Petition, p. 18. This fear, as stated, discredits the district court's analysis of the facts presented in opposition to the Petitioners' motion. The district court did not engage in a flight of fancy but rather considered all the evidence before it in a professional and thorough manner. There simply is no reason to assume, as Nintendo suggests, that other trial courts will rely on the district court's decision and indiscriminately wreak havoc on the "customer suit exception."

Finally, the district court's assessment that severance and transfer of patent infringement claims against manufacturers "should be reserved for that small subset of cases where an attempt to manipulate venue is clear" makes perfect sense and is consistent with the body of case law that has been applied in multi-defendant cases where patent infringement claims have been asserted against both a manufacturer and retailers. All the cases cited by Petitioners in support of their motion to stay, sever, and transfer share two principal facts that caused courts to

suspect the plaintiff was engaged in forum shopping: (i) the plaintiffs were not residents of the venues in which the cases were filed; and (ii) the plaintiffs joined one or more retailers without any apparent purpose other than to thwart a manufacturer's motion to transfer under § 1404(a).

For example, in *Oplus Technologies*, *Ltd. v. Sears Holding Corp.*, No. 11-CV-9029, 2012 WL 2400478 (N.D. Ill. June 15, 2012), one of the cases cited by Petitioners in support of their motion, an Israeli corporation filed patent infringement claims against a retailer and a manufacturer. The manufacturer moved to sever and to transfer the claim against it to another venue. The trial court noted the retailer (Sears) was merely one of many retailers of the manufacturer's accused products and "the obvious reason [the plaintiff] joined Sears in this action was to establish venue in the Northern District of Illinois." *Id.* at *4. For this reason, the court concluded the plaintiff's claims against Sears had no independent significance, that the plaintiff had joined its claim against Sears solely as an exercise in forum shopping, and therefore, the court granted the motion to sever and to transfer the claim against the manufacturer. *Id.*

Another example cited by Petitioners is *L.G. Electronics*, *Inc. v. First Int'l Computer*, *Inc.*, 138 F. Supp. 2d 574 (D.N.J. 2001). As with all the cases cited by the Petitioners, the plaintiff was neither a citizen nor a resident of the venue in which the case was filed. The plaintiff asserted patent infringement claims against

19

a Taiwanese manufacturer, its California subsidiary, and a single reseller in New Jersey.  The local reseller had no relationship with the manufacturers.  Since the plaintiff was not a resident of the venue, there was no independent significance to the plaintiff's claim against the retailer, and the claim was joined for the sole purpose of securing venue, the court deemed the claim against the retailer "peripheral" and granted the manufacturer's motion to sever, transfer, and stay. The court expressly noted severance and transfer of a claim is appropriate when a plaintiff has joined a claim against a reseller "for the sole purpose of accentuating the burdens of trial upon a defendant who otherwise would have been entitled to a § 1404(a) transfer." *Id.* at 584.

Unlike all plaintiffs in the cases cited by the defendants, Secure Axcess is a citizen and resident of its chosen venue.  Moreover, Nintendo has transacted business and has sold accused devices to retailers within this venue.  With or without the claims against the Retailer Defendants, this court is an appropriate venue for Secure Axcess's claims against Nintendo.  Thus, it is clear Secure Axcess did not join claims against the Retailer Defendants solely to manufacture venue, nor did it sue eleven (11) major retailers located throughout the United States simply to thwart a prospective motion to transfer by Nintendo under § 1404(a).  The district court properly noted these facts and concluded the policy behind the "customer suit exception" did not mandate its application in this case.

The district court's decision does not "invite venue manipulation by incentivizing patentees to add token retailer defendants to secure their preferred forum beyond the reach of § 1404(a)," as the Petitioners claim.  Other courts, when presented with motions to sever and transfer, will review the facts before them and apply their sound judicial discretion, just as the district court has in this case.  If a patentee in a future action attempts to manufacture venue or to thwart a motion to stay and transfer by adding a mere "token retailer defendant," as the Petitioners fear, then a district court will recognize the gambit and disregard it.  Indeed, this is precisely what happened in the cases cited by Petitioners in support of their motion to stay, sever, and transfer (discussed above).

II.    **The district court's recognition of Secure Axcess's right to prove and to recover damages from all defendants, rather than merely from Nintendo, in connection with its analysis of the applicability of the "customer suit exception" was correct, as a matter of law.**

   A.    **The district court properly recognized Secure Axcess's claims against the Retailer Defendants are not merely "peripheral" to the claim against Nintendo.**

The district court's decision to consider Secure Axcess's damages claims against all defendants in connection with its determination of the defendants' motion to sever, stay and transfer in this case does not, as the Petitioners claim, "contradict every other decision on this issue."  There is absolutely no indication in any of the cases cited by the Petitioners that any of the trial courts were presented with facts equivalent to the facts of this case or arguments that were similar to

those presented by Secure Axcess in opposition to the defendants' motion.
Certainly, none of the cases cited by the Petitioners contains any analysis of the
tension between the "customer suit exception," as applied to cases in which a
plaintiff sued both a manufacturer and one or more retailers, and a plaintiff's right
to pursue damages from all joint tortfeasors in a single case.  None of the cases
upon which the Petitioners rely contain any discussion of a plaintiff's right to seek
potentially higher damages from retailer defendants based facts similar to those
presented by this case, including the fact Retailer Defendants bundle sales of other
products with Accused Products.  Thus, the district court's decision in this case
cannot be said to "contradict" any other court's decision with respect to application
of the "customer suit exception."

The Petitioners do a significant disservice to the district court when they
claim "the district court reached this decision without any factual or legal
analysis."  Petition, p. 21.  This statement is both disrespectful and false.  In
opposition to the defendants' motion, Secure Axcess presented substantial
argument and evidence to support its contention that its damages from the retailer
defendants likely would be higher than a recovery of damages solely from
Nintendo.  Specifically, Secure Axcess pointed out:

(i) it is a "non-practicing entity" and therefore, the measure of its damages
will be a reasonable royalty;

22

(ii) the reasonable royalty to which Secure Axcess will be entitled from each defendant will be determined as a function of the revenues earned by each defendant from its sales of Accused Products (the "Royalty Base") and a percentage that is to be paid to Secure Axcess in connection with such sales (the "Royalty Rate");

(iii) a Retailer Defendant's Royalty Base will be higher than Nintendo's Royalty Base for the same Accused Products because the Retailer Defendants must sell the Accused Products at higher prices than they pay to Nintendo in order to earn a profit;

(iv) the Retailer Defendants' Royalty Bases also will be higher because they often bundle their sales of Accused Products with accessories, such as video games, many of which are developed and manufactured by companies other than Nintendo and these bundled or convoyed sales of non-infringing accessories may be included in the Retailer Defendants' Royalty Base;[5]

(v) the Royalty Rate for each defendant, including the Retailer Defendants, will be determined based on the economic and financial factors that would

---

[5] *Fujifilm Corporation v. Benun*, 605 F.3d 1366, 1373 (Fed. Cir. 2010) (jury was entitled to consider bundling and convoyed sales to determine royalty base); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) (same).

have been relevant to a fictional license negotiation with Secure Axcess at
the time the infringement began;[6] and

(vi) to determine the Royalty Rate for each defendant, one must separately
consider the revenues earned from its sales of accused products and the
expenses incurred in connection with such sales and whether and to what
extent the defendant would have considered that a license to sell Accused
Products would have enabled it to make derivative or convoyed sales of
other products.[7]

A228-30.

The district court properly considered Secure Axcess's arguments and
evidence regarding its damages claims and concluded it "should have the
opportunity to pursue damages from either Nintendo or the Retailer Defendants or
both, as it clearly intended by filing this single suit, rather than have those options
directly or indirectly foreclosed through the relief Nintendo has requested."  A10.
The Petitioners may disagree with the district court's analysis and its decision but
they cannot claim in good faith the district court reached its decision without any
legal or factual analysis.  Rather, the district court considered the facts presented

---

[6] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

[7] *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1559 (Fed. Cir. 1983)
(anticipated collateral sales of non-infringing products relevant to determination of
royalty rate); *Georgia-Pacific Corp.*, 318 F. Supp. at 1120 (same).

by this case (at this preliminary stage)[8] and acted with sound judicial discretion in connection with its ruling.

The Petitioners' argument that the district court erred when it determined Secure Axcess should have the opportunity to pursue damages from both Nintendo and the Retailer Defendants is a red herring. Secure Axcess acknowledged and the district court fully understood and expressly noted Secure Axcess may only have one recovery from the defendants with respect to their sales of Accused Products. Notwithstanding this obvious and undisputed limitation on Secure Axcess's ultimate recovery of damages, the district court acknowledged Secure Axcess has the right to prove its entitlement to damages against all the defendants and then to seek the highest possible recovery. A11.

For example, after proving the *quantum* of its damages against both Nintendo and the Retailer Defendants, Secure Axcess might choose to seek

---

[8] Petitioners complain the district court reached its decision that damages may differ between Nintendo and the Retailer Defendants based on "hotly disputed factual and legal issues that the district court did not even attempt to address." Petition, pp. 23-24. This complaint is nonsensical. It suggests Secure Axcess should have proved its damages claims against Nintendo and the Retailer Defendants in connection with its opposition to the defendants' motion to transfer but of course, this was neither feasible nor appropriate. The defendants' transfer motion, like all transfer motions, was made at an early stage in this litigation, prior to discovery or the disclosure of expert opinions regarding damages issues. Thus, it was entirely appropriate for Secure Axcess and the district court to rely on preliminary evidence and arguments that support the rather non-controversial conclusion that royalty rates and royalty basses will differ among the Retailer Defendants and Nintendo.

recovery from the Retailer Defendants based on their sales of Accused Products and then pursue Nintendo for any remaining sales of Accused Products that were not subsumed within the universe of the Retailer Defendants' sales. In this manner, Secure Axcess would be able to obtain the highest possible recovery of damages from one or more defendants but at the same time would receive only a single recovery of damages for the total universe of Accused Products sold.

**B.     The district court properly recognized adjudication of the infringement claim against Nintendo could not, under any circumstances, resolve the issues of damages in connection with the claims against the Retailer Defendants.**

It is obvious and undisputed and the district court expressly recognized a judicial determination in favor of Nintendo would resolve the claims against the Retailer Defendants. This will be true in every patent infringement case in which both a manufacturer and retailers are sued for sales of the same accused products. If the second "*Shifferaw* factor" requires nothing more than to establish this mere truism, then it is not a "factor," at all, and it may be disregarded.

In order to provide some meaning to the second "*Shifferaw* factor" and render it relevant to the analysis of a motion to sever, stay, and transfer, the phrase "whether adjudication of the severed claims would potentially dispose of remaining claims" must be construed to mean whether adjudication *in favor of the patentee* would resolve the severed claims against severed defendants. Only when the patentee prevails on its patent infringement claim against a manufacturer will

26

there remain an issue regarding whether or not the patentee has unresolved claims against severed defendants.

In some situations, adjudication in favor of the patentee on its claim against a manufacturer will potentially resolve its claims against severed defendants. For example, if a patentee seeks only injunctive or declarative relief against customers of the manufacturer (a situation typically presented in the "customer suit exception" cases), then adjudication in the patentee's favor against the manufacturer potentially will resolve all the severed claims against the customers. Additionally, if a patentee seeks damages in the form of lost profits, rather than in the form of a reasonable royalty, then adjudication in its favor against a manufacturer (including an award of lost profits based on the manufacturer's sales of accused products to its retailers) potentially will resolve the severed claims against the retailers (as the measure of lost profits damages against them would not differ from the lost profits damages assessed against the manufacturer for the same accused products). On the other hand, in cases (such as this one) where a patentee seeks damages in the form of a reasonable royalty, then the royalty must be assessed against each defendant based on each defendant's particular circumstances. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Therefore, in these cases adjudication in the patentee's favor against a manufacturer cannot resolve the severed claims because the patentee will

be required to prove separately the reasonable royalty for each severed defendant, notwithstanding any damages awarded to the patentee in connection with its claim against the manufacturer.

In sum, if there is to be anything at all to analyze under the second "*Shifferaw* factor," then the issue must be construed to be whether adjudication *in favor of the patentee* would resolve the severed claims against severed defendants. Otherwise, this factor is meaningless.

## III.   Having determined the claims against the Retailer Defendants should not be severed, the district court had no choice but to deny the motion to transfer, notwithstanding whether or not the Western District of Washington is a clearly more convenient venue for Nintendo.

Having determined severance of the claims against Nintendo from the claims against the Retailer Defendants would be inappropriate, the district court was not required to consider whether the Western District of Washington is a clearly more convenient venue for a case against Nintendo. Clearly, in the absence of severance, the entire action cannot be transferred to the Western District of Washington because the suit could not have originally been filed in the Western District of Washington. 28 U.S.C. § 1404(a). Thus, if severance is not appropriate, then transfer is not authorized, notwithstanding the issue of whether or not the Western District of Washington is a more convenient venue for Nintendo.

The district court did not abuse its discretion or misapply applicable law when it chose to resolve the defendants' motion to sever prior to consideration of

their motion to transfer.  Indeed, as the district court expressly noted, this approach

is not unique.  "Courts have consistently treated the third prong as a separate

transfer analysis as to the severed defendants after severance is found proper under

factors (1) and (2)."  A8-9, citing *Shifferaw*, 2010 WL 1064380 at *4 ("Because

the court has found that severance is proper as to Mishan, the court analyzes

whether transfer of the claims against Mishan is appropriate"); *Koh*, 250 F. Supp.

2d at 633 ("Therefore, it is appropriate to consider transfer of the claims against the

Microtek defendants and MEI, having in mind severance and stay of the claims

against MCSC"); *Toshiba*, 2005 WL 2415960 at *6 (found severance was

warranted before moving on to the transfer factors; *Corry*, 18 F. Supp. 2d at 666

(same).

The district court's approach was not in any way inconsistent with *In re

Nintendo Co., Ltd.*, 544 F. App'x 934 (Fed. Cir. 2013), which did not address

whether or not a trial court must consider transfer in the event severance is

inappropriate but rather held a trial court erred by failing to consider a motion to

sever, stay, and to transfer before allowing the plaintiff to add infringement claims

pursuant to Rule 18 against "retailer defendants" based on their sales of products

that were manufactured by other companies.  *Id.* at 940 ("We find that the district

court first should have addressed the Petitioner's First Motion to Sever and transfer

the case against Nintendo to the Western District of Washington prior to assessing

29

whether additional claims against the retailer defendants could be asserted under Rule 18.").  Nor was the district court's approach contrary to *In re Toyota Motor Corp.*, 2014 WL 1316595 (Fed. Cir. April 3, 2014), in which this Court found a trial court's decision to deny a motion to transfer claims against Toyota to a more convenient forum was a clear abuse of discretion and remanded the case with instructions to determine whether severance of claims against a distributor defendant was appropriate as a condition precedent to transfer of the claims against Toyota.  *Id.* at *3.  Indeed, the holding of *In re Toyota Motor Corp.* actually supports the district court's conclusion that the issue of whether or not to sever claims against a manufacturer is to be undertaken separately from the issue of whether or not to transfer claims against a manufacturer to another venue.

## CONCLUSION

Respondent, Secure  Axcess, LLC respectfully requests the Court to deny the petition for a writ of mandamus.

Dated: April 22, 2014                    Respectfully submitted,

                                         /s/ James E. Davis
                                         James E. Davis
                                         FERGUSON, BRASWELL & FRASER, PC
                                         2500 Dallas Parkway, Suite 260
                                         Plano, Texas   75093
                                         (972) 378-9111(Telephone)
                                         (972) 378-9115 (Facsimile)
                                         jdavis@dallasbusiness.com

                                         Casey L. Griffith
                                         Kelly J. Kubasta
                                         Klemchuk Kubasta LLP
                                         8150 North Central Expressway, 10th Floor
                                         Dallas, Texas 75206
                                         (214) 367-6000 (Telephone)
                                         (214) 367-6001 (Facsimile)
                                         Casey.griffith@kk-llp.com
                                         kelly.kubasta@kk-llp.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of April, 2014, I caused this Response to Petition for Writ of Mandamus to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users, and further served, via U.S. Mail, postage prepaid, two (2) copies of the Response to Petition for Writ of Mandamus, and via email, one PDF copy upon:

Stephen R. Smith
COOLEY LLP
One Freedom Square
11951 Freedom Drive
Reston, Virginia  20190
(703) 456-8035 (telephone)
(703) 456-8100 (facsimile)
stephen.smith@cooley.com

Lori R. Mason
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, California  94306
(650) 843-5000 (telephone)
(650) 857-0663 (facsimile)
lmason@cooley.com

*Counsel for Petitioner Nintendo of America Inc.*

Jay F. Utley
BAKER & MCKENZIE LLP
2001 Ross Avenue
2300 Trammel Crow Center
Dallas, Texas  75201
(214) 978-3000 (telephone)
(214) 965-3099 (facsimile)
Jay.utley@bakermckenzie.com

*Attorneys for Petitioners Nintendo of America Inc., Micro Electronics, Inc.,
Hastings Entertainment, Inc., GameStop Corp., Best Buy Stores, L.P.,
BestBuy.com, LLC, Kmart Corporation, Target Corporation, and Toys "R"
US Delaware, Inc.*

Brian Christopher Banner
KING & SPALDING LLP
401 Congress Avenue, Suite 3200
Austin, Texas  78701
(512) 457-2000 (telephone)
(512) 457-2100 (facsimile)
bbanner@kslaw.com

Sanjeet Kumar Dutta
STEPTOE & JOHNSON LLP
1001 Page Mill Road, Building 4, Suite 150
Palo Alto, California  94304
(650) 687-9500 (telephone)
(650) 687-9499 (facsimile)
sdutta@steptoe.com

*Counsel for ACCO Brands Corporation*

Ravinder Singh Deol
Jennifer Klein Ayers
Steven G. Schortgen
K&L GATES LLP
1717 Main Street, Ste 2800
Dallas, Texas  75201
(214) 939-5976 (telephone)
(214) 939-5849 (facsimile)
ravi.deol@klgates.com
jennifer.ayers@klgates.com
steve.schortgen@klgates.com

*Counsel for ACCO Brands Corporation, Accell Corporation, DisplayLink Corp., Hewlett Packard Company, IOGear, Inc., LeanCode L.L.C. d/b/a Plugable, Technologies LeanCode LLC, SIIG, Inc., Sewell Development Corporation, Sewell Development Corporation d/b/a Sewell Direct, StarTech.com USA L.L.P., Targus, Inc., Trippe Manufacturing Co., Lenovo (Unied States) Inc., Diamond Multimedia, Inc.*

Dan Duncan Davison
FULBRIGHT & JAWORSKI
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
(214) 855-8000 (telephone)
(121) 485-58200 (facsimile)
dan.davison@nortonrosefulbright.com

*Counsel for Amazon.com, LLC*

Debra Elaine Gunter
YARBROUGH WILCOX, PLLC
100 E. Ferguson Street, Suite 1015
Tyler, Texas  75702
(903) 595-3111 (telephone)
debby@yw-lawfirm.com

*Counsel for Amazon.com, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Game Stop Corporation, Hastings Entertainment, Inc., K mart Corporation, Micro Electronics, Inc., Target Corporation, Toys "R" Us-Delaware, Inc., Nintendo of America, Inc.*

Jay Forrest Utley
BAKER & MCKENZIE
2001 Ross Avenue, Suite 2300
Dallas, Texas  75201
(214) 978-3036 (telephone)
(214) 978-3099 (facsmilie)
jay.utley@bakermckenzie.com

*Counsel for Amazon.com, LLC, Best Buy Stores, L.P., BestBuy.com, LLC,
Game Stop Corporation, Hastings Entertainment, Inc., K mart Corporation,
Micro Electronics, Inc., Target Corporation, Toys "R" Us-Delaware, Inc.,
Wal-Mart Stores Texas, LLC, Wal-Mart Stores, Inc., Nintendo of America,
Inc., Amazon.com, Inc., Nintendo Co., Ltd.*

Daniel Joseph O'Connor
Omar Dawood Galaria
BAKER & MCKENZIE
300 E Randolph Drive
Chicago, Illinois  60601
(312) 861-2790 (telephone)
(312) 698-2325 (facsimile)
daniel.oconnor@bakermckenzie.com
omar.galaria@bakermckenzie.com

*Counsel for Amazon.com, LLC, Best Buy Stores, L.P., BestBuy.com, LLC,
Hastings Entertainment, Inc., K mart Corporation, Micro Electronics, Inc.,
Target Corporation, Toys "R" Us-Delaware, Inc., Nintendo of America,
Inc., Amazon.com, Inc., Nintendo Co., Ltd.*

Stefani E Shanberg
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, California  94304-1050
(650) 565-3645 (telephone)
(650) 493-6811 (facsimile)
sshanberg@wsgr.com

*Counsel for DisplayLink Corp.*

Herbert A Yarbrough, III
ATTORNEY AT LAW
100 E Ferguson, Suite 1015
Tyler, Texas  75702
(9030 595-3111 (telephone)
(903) 595-0191 (facsimile)
trey@yw-lawfirm.com

*Counsel for Nintendo of America, Inc., Amazon.com, LLC, Best Buy Stores, L.P., BestBuy.com, LLC, Game Stop Corporation, Hastings Entertainment, Inc., K mart Corporation, Micro Electronics, Inc., Target Corporation, Toys "R" Us-Delaware, Inc.*

Carl R Roth
Brendan Clay Roth
Amanda Aline Abraham
THE ROTH LAW FIRM
115 N. Wellington, Suite 200
Post Office Box 876
Marshall, Texas  75671-0876
(903) 935-1665 (telephone)
(903) 935-1797 (facsimile)
cr@rothfirm.com
br@rothfirm.com
aa@rothfirm.com

*Counsel for Secure Axcess, LLC*

Michael Charles Smith
SIEBMAN BURG PHILLIPS & SMITH, LLP
Post Office Box 1556
Marshall, Texas  75671-1556
(903) 938-8900 (telephone)
(972) 767-4620 (facsimile)
michaelsmith@siebman.com

Rachelle H Thompson
MCGUIREWOODS LLP – RALEIGH
434 Fayetteville Street, Suite 2600
Raleigh, North Carolina  27611
(919) 755-6572 (telephone)
(919) 755-6591 (facsimile)
rthompson@mcguirewoods.com

*Counsel for Wal-Mart Stores Texas, LLC, Wal-Mart Stores, Inc.*

> /s/ James E. Davis
> *Counsel for Respondent*