Misc. Docket No. 2014-132

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IN RE NINTENDO OF AMERICA INC., MICRO ELECTRONICS, INC.,
HASTINGS ENTERTAINMENT, INC., GAMESTOP CORP., BEST BUY
STORES, L.P., BESTBUY.COM, LLC, KMART CORPORATION, TARGET
CORPORATION, AND TOYS "R" US-DELAWARE, INC.,

*Petitioners.*

_____

## NINTENDO'S EMERGENCY MOTION FOR STAY OF
## DISTRICT COURT PROCEEDINGS PENDING RULING
## ON PETITION FOR WRIT OF MANDAMUS

## I.    INTRODUCTION AND RELIEF SOUGHT

Petitioner Nintendo of America Inc. ("Nintendo") moves this Court under
Federal Rule of Appellate Procedure 8 for an order staying all proceedings in the
district court pending disposition of Nintendo's petition for writ of mandamus from
the March 7, 2014 Order denying the Defendants' Motion to Sever and Transfer
the claims against Nintendo to a more convenient venue.

A stay is warranted because Nintendo's petition will likely succeed on the
merits and so result in transfer of the claims against it to the Western District of
Washington.  In denying Defendants' Motion to Sever and Transfer, the district
court departed from settled authority by refusing to sever the claims against
Nintendo, whom the court characterized as the "true defendant" for purposes of

infringement and validity. Although the district court denied severance, it nonetheless stayed the case against the peripheral retailer defendants, ordering the infringement and validity claims to proceed to judgment against Nintendo only. The court further ruled that it would retain venue for purposes of the entire action, and not consider the merits of transferring the claims against Nintendo pursuant to Section 1404(a). The district court's analysis was legally erroneous and constitutes an abuse of discretion.

As this Court has emphasized, transfer issues should be resolved before a district court rules on substantive issues in order to minimize prejudice to defendants. But absent a stay, the district court will likely address the substantive issues in this case by issuing a *Markman* ruling before this Court can resolve the transfer issues raised by Nintendo's petition.[1] Especially given that Nintendo's transfer request has not yet been considered on the merits, Nintendo would be unfairly prejudiced if forced to litigate claim construction before this Court rules on its petition.

At the same time, the requested stay will not prejudice any party. Plaintiff is a non-practicing entity and so is not seeking injunctive relief and will suffer no business disruption from the requested stay.

---

[1] Nintendo brings this motion as an emergency motion because the *Markman* hearing is scheduled for June 4, 2014. (Appendix of Exhibits filed in support of Petition for Writ of Mandamus ("A__") at 530-31).

In addition, a stay would promote efficient use of judicial and party resources. There is no reason to expend substantial resources litigating claim construction in the Eastern District of Texas before this Court decides whether the claims against Nintendo should be transferred to the Western District of Washington.

Nintendo's likelihood of success on the merits and the balancing of equities therefore warrant a stay of all district court proceedings pending resolution of Nintendo's petition.

## II.    FACTUAL BACKGROUND

Plaintiff Secure Axcess, LLC ("Plaintiff" or "Secure Axcess") filed suit in the Eastern District of Texas against Nintendo and eleven retailers (the "Retailers" or "Retailer Defendants") that sell or resell the accused Nintendo products.[2]

On June 18, 2013, Nintendo and the Retailer Defendants filed their Joint Motion to Sever and Transfer ("Motion to Sever and Transfer"). The Motion to Sever and Transfer asked the district court to sever and stay Plaintiff's claims against the Retailers and, pursuant to 28 U.S.C. § 1404(a), transfer the claims against Nintendo to the Western District of Washington, the location of Nintendo's

---

[2] A15-32.

headquarters. The parties completed their briefing on the Motion to Sever and Transfer on August 26, 2013.[3]

On November 27, 2013, the Retailers filed an Emergency Opposed Motion to Stay proceedings as to the Retailers.[4] Nintendo and the Retailers filed a similar motion requesting a stay pending the district court's ruling on the Motion to Sever and Transfer on January 30, 2014.[5] The Court granted these motions and stayed all proceedings through an order issued on February 10, 2014, agreeing that "a short stay pending resolution of the severance and transfer issues is likely to simplify the issues in this case" and would not unduly prejudice Plaintiff.[6]

On March 7, 2014, the district court issued a Memorandum Opinion and Order denying the Motion to Sever and Transfer and (1) bifurcating the infringement/validity and damages portions of the case, and (2) staying the case against the Retailers pending a ruling on the infringement/validity issues.[7]

---

[3] *See* A357-63.

[4] A482-92.

[5] A493-504.

[6] A480-81.

[7] A1-14. The district court's order was conditioned on receipt of a stipulation from the Retailers agreeing to be bound by the rulings for or against Nintendo on infringement and validity, and the Retailers subsequently filed such a stipulation. A476-79. The district court has confirmed that the stay of the case against the Retailers is in full force and effect. A543.

On April 14, 2014, Nintendo filed a petition for writ of mandamus requesting that this Court vacate this district court's March 7, 2014 Order and remand with instructions to sever the claims against Nintendo and transfer those claims to the Western District of Washington. The next day, this Court ordered Secure Axcess to respond to Nintendo's petition no later than April 22, 2014, and ordered Nintendo to submit any reply no later than five days after Secure Axcess served its response, emphasizing that the parties should not expect extensions of time. (D.I. 9.) Secure Axcess filed its response to Nintendo's petition on April 22, 2014, and Nintendo filed a reply in support of its petition on April 29, 2014.

On April 15, 2014, Nintendo filed in the district court an emergency motion to stay proceedings pending a ruling on Nintendo's writ petition (attached as Exhibit A hereto). Smith Decl., ¶ 3. On April 23, 2014, Secure Axcess filed an opposition to Nintendo's motion to stay. *Id.*, ¶ 4. The defendants in the consolidated case ("the DisplayLink Defendants") [8] did not file a response. *Id.* To date, the district court has not ruled on Nintendo's emergency motion to stay. *Id.,* ¶ 5.

---

[8] On August 2, 2013, the district court consolidated Case No. 13-cv-289, *Secure Axcess LLC v. Accell Corporation et al.,* with the case filed by Secure Axcess against Nintendo and the Retailer Defendants for all pretrial issues except venue. A537.

### III.    ANALYSIS

#### A.    Legal Principles

In evaluating a motion to stay pending disposition of a writ of mandamus, the Court of Appeals applies the same four-factor test that governs stays pending direct appeal:  (1) the likelihood that the party seeking the stay will prevail on the merits of the petition; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.  *See Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).  The stay analysis balances these factors, and each factor "need not be given equal weight." *Id.*  For example, the Court can decide a stay request by "assess[ing] movant's chances for success on appeal and weigh[ing] the equities as they affect the parties and the public." *Id.* at 513.

A party seeking a stay of proceedings pending appellate review must first seek a stay from the district court before requesting a stay from the Court of Appeals, unless doing so would be impracticable.   Fed. R. App. P. 8(a)(1). Nintendo has satisfied this procedural rule because it filed an emergency motion with the district court on April 15, 2014, seeking the same relief requested through this Motion.  Although briefing on Nintendo's district court motion completed on April 23, 2014, the district court has not yet issued a ruling and the *Markman*

hearing date of June 4, 2014, is fast approaching.  Therefore, Nintendo seeks this Court to enter the requested stay of the district court proceedings.

### B.    This Court Should Stay the District Court Proceedings Pending Its Ruling on the Petition for Writ of Mandamus.

A stay of the district court proceedings is necessary and appropriate to prevent further prejudice to Nintendo while this Court resolves the transfer issues raised by Nintendo's petition.  The district court itself recognized the merits of a stay to "simplify the issues" and promote efficiency pending its ruling on the Motion to Sever and Transfer,[9] concerns that likewise merit a stay while Nintendo's petition is pending before this Court.

Nintendo will be harmed if forced to litigate substantive issues of claim construction before this Court can finally resolve the issues regarding Nintendo's venue rights by ruling on its mandamus petition.  A stay will ensure that, after this Court rules on Nintendo's petition, the district court proceedings will go forward in an efficient, cohesive manner that does not prejudice Nintendo's venue rights.

At the same time, the requested stay will not prejudice any other party. Plaintiff is a non-practicing entity and so is not pursuing injunctive relief and will suffer no adverse business consequences from a brief stay pending this Court's ruling.

---

[9] A480-81.

Nintendo also respectfully submits that its petition is likely to succeed on its merits. Having found that Nintendo is the "true defendant" for purposes of infringement and validity and staying the case as to the Retailers, the district court should have followed established precedent to sever and transfer the claims against Nintendo to the Western District of Washington, a clearly more convenient venue than the Eastern District of Texas.

Nintendo's likelihood of success on the merits and the balancing of equities therefore warrant issuance of the requested stay. *See Standard Havens*, 897 F.2d at 512.

### 1.    Nintendo Is Likely To Prevail on the Merits of Its Writ Petition.

Nintendo will likely succeed on the merits of its writ petition because the district court erred by denying Nintendo's motion to sever and transfer the claims against it to a more appropriate forum.

The district court specifically found that as to the core issues of infringement and validity, Nintendo is the "true defendant" and the Retailers are merely peripheral.[10] The district court also recognized that resolution of infringement and validity may dispose entirely of Plaintiff's claims against the Retailers, and so

---

[10] A11.

bifurcated the liability and damages phases of the case and stayed the claims against the Retailers pending resolution of Nintendo's liability.[11]

In this posture, the district court should have followed the clear line of precedent ordering severance of peripheral claims against retailers from those asserted against a manufacturer and transfer of the claims against the manufacturer to a more convenient venue.  The district court erred by declining to consider whether transfer of the claims against Nintendo was warranted under Section 1404(a).  *See In re Nintendo*, Misc. No. 151, 544 F. App'x 934, 942 (Fed. Cir. Sept. 25, 2013) ("[T]he district court erred by not beginning its analysis by addressing whether the parties should have been severed for purposes of facilitating transfer of venue …."); *In re Toyota Motor Co.*, No. 2014-113, slip op. at 6 (Fed. Cir. Apr. 3, 2014) (remanding for district court to decide severance motion "on the premise that, putting Gulf States aside, Toyota has a clear right to transfer"); *In re WMS Gaming, Inc.*, No. 2014-107, slip. op. at 6 (Fed. Cir. Apr. 23, 2014) (emphasizing that "severance is particularly appropriate in peripheral claim cases to facilitate transfer").  Nintendo demonstrated "a clear right" to transfer the claims against it to the Western District of Washington, which the district court should have considered in its severance analysis.

---

[11] A13.

The court's decision produced the clearly erroneous result that, absent grant of Nintendo's petition, infringement and validity will be tried solely against Nintendo in a clearly inconvenient forum. As this Court has recognized in prior non-practicing entity suits brought against Nintendo, there is "a stark contrast in relevance, convenience, and fairness" between the Eastern District of Texas and the Western District of Washington. *In re Nintendo*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The Western District of Washington is where Nintendo is headquartered, where Nintendo has "extensive contacts," and where the "local interest" in resolution of infringement lawsuits against Nintendo is high. *Id.*

The claims filed by Secure Axcess do not belong in Texas—"[n]o parties, witnesses, or evidence have any material connection to the venue chosen by the plaintiff." *See id.* at 1198, 1200 ("Nintendo has met its difficult burden of demonstrating a clear and indisputable right to a writ … [because] the district court clearly abused its discretion in denying transfer from a venue with no meaningful ties to the case.").

Nevertheless, the district court declined to consider transferring the claims against Nintendo based on the court's finding that severance of the claims against Nintendo was not warranted. Specifically, the district court found that the claims against Nintendo should not be severed because, it determined, the claims against the Retailers are not peripheral as to damages. But the district court did not

support its conclusion regarding damages with specific factual findings or legal conclusions.   The court simply accepted as true Plaintiff's dubious claims that higher damages **might** be available from the Retailers, despite the court's "real world experience" that patentees usually opt to collect damages from manufacturers rather than retailers.[12]

The district court erred by relying on speculative future damages issues as a basis for not severing and transferring the threshold liability claims now pending against Nintendo.   Courts have uniformly held that whether a retailer is "peripheral" for purposes of severance and transfer turns on its connection (or lack thereof) to infringement. *See, e.g.*, *Shifferaw v. Emson USA,* No. 2:09-cv-54, 2010 U.S. Dist. LEXIS 25612, at *9 (E.D. Tex. March 18, 2010) ("Where a single manufacturer is the only entity in the U.S. who makes and sells the only accused product to retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturer.") (internal citations omitted); *see also WMS Gaming, Inc.*, slip op. at 3 (vacating denial of transfer when the district court had denied severance and transfer even though it had concluded that "focus on the 'making' of the [allegedly infringing] games is more appropriate" and that "information related to game play and the collection of revenue at the casinos 'will likely be irrelevant to the core of [the] patent infringement action'").

---

[12] A7-8.

11

There was no basis or precedent for denying severance based on hypothetical damages issues when the liability determination may moot the damages claims entirely. *See Koh v. Microtek Intern. Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003) (in granting motion to sever and transfer, explaining "[plaintiff] has no claim against [the retailer] for infringing the '830 patent unless [plaintiff] is first able to obtain a ruling that the [manufacturer] is liable for patent infringement").

The district court's decision produces the very result the severance and transfer rules are designed to avoid:  allowing "the inclusion of some retailers [ ] only peripherally involved in the alleged wrongdoing [to] prevent a court from following binding precedent that requires transfer to a more convenient venue for trial." *In re Nintendo*, 544 F. App'x at 941.  Under the district court's reasoning, by merely tacking on retailer defendants and alleging that higher damages *could* be available from those retailers, a plaintiff can immunize its venue choice from the Section 1404(a) analysis.

The district court viewed its denial of severance and transfer as a means of preserving Plaintiff's "opportunity to pursue damages against Nintendo or the Retailer Defendants or both,"[13] but refusing to apply Section 1404(a) was not permissible or necessary to protect Plaintiff's rights.  Even if the claims against

---

[13] A10.

Nintendo are transferred, Plaintiff remains free to pursue damages against Nintendo in the Western District of Washington or return to the Eastern District of Texas to pursue damages against the Retailers.

Nintendo respectfully submits that the district court's decision conflicts with this Court's decisions and also conflicts with the uniform body of district court authority on this issue. Thus, Nintendo's petition is likely to succeed on the merits, which weighs in favor of the requested stay.

## 2. A Stay Should Issue To Prevent Harm to Nintendo.

The second factor, harm to Nintendo absent a stay, also weighs in favor of the requested stay. *See Standard Havens*, 897 F.2d at 512.

Nintendo has and continues to suffer prejudice by having to litigate this case in a clearly inconvenient forum. (*See* Dkt. No. 61 at 10 (the bulk of evidence relevant to infringement is located at Nintendo's Redmond, Washington headquarters)); *see also In re EMC Corp.*, 501 F. App'x 973, 975-76 ("Congress' intent 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense' may be thwarted where defendant is subject to extended litigation prior to resolution of its transfer motion.") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *Nintendo*, 544 F. App'x at 941 ("[T]his court has specifically recognized the importance of addressing motions to transfer at the outset of litigation.") (internal

quotation omitted); *DietGoal Innovations LLC v. El Pollo Loco Inc.*, No. 12-cv-568, 2013 WL 3760125, *1 (E.D. Tex. July 16, 2013) ("Timely motions to transfer venue 'should [be given] a top priority in the handling of [a case] . . . .'") (quoting *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003)).

Nintendo is further prejudiced if forced to complete *Markman* proceedings, scheduled for argument on June 4, 2014, before this Court considers Nintendo's right to transfer to the Western District of Washington.  Nintendo moved to sever and transfer early so that it would obtain a ruling and any appropriate appellate review before the district court decided substantive issues such as claim construction.  The district court, however, did not decide the motion to sever and transfer until March 7, 2014, approximately six-and-a-half months after briefing completed.

As a result, even though Nintendo promptly filed its writ petition, it cannot realistically expect a decision from this Court before the district court holds the *Markman* hearing on June 4, 2014, and issues a *Markman* order.  Nintendo should not have to litigate the merits of this case in an inconvenient forum before this Court rules on its mandamus petition.  *Cf. Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977) ("Venue rights, contrary, perhaps, to the view of the district court, which did not mention them at all, are important, particularly in patent litigation.").

### 3.     The Requested Stay Will Not Prejudice Any Party.

With respect to the third factor, issuance of the requested stay will not prejudice any party.  The district court has already stayed proceedings as to the Retailers, and Plaintiff will suffer no prejudice from a short stay until this Court decides Nintendo's petition.  While Secure Axcess claimed, in its opposition to Nintendo's district court motion to stay, that a stay would harm Secure Axcess because it may delay the current trial date, Secure Axcess offered no facts to substantiate this claim.  Nor is this claim plausible given that Secure Axcess is a non-practicing entity, and so is not pursuing injunctive relief[14] and will suffer no adverse business consequences from a brief stay.[15]  Indeed, since the district court's issuance of the initial Discovery Order on August 20, 2013,[16] Secure Axcess has yet to issue a single interrogatory or notice any depositions.  Smith Decl., ¶ 7.

---

[14] A228.

[15] Secure Axcess further complained in its opposition that Nintendo should not be allowed to delay filing its claim construction brief when Secure Axcess has already done so, but this point is moot because Nintendo filed its responsive claim construction brief in the district court on May 1, 2014.  Smith Decl., ¶ 6.

[16] A539.

The DisplayLink Defendants did not oppose Nintendo's district court motion to stay.[17]

Finally, the fourth factor, public interest, also weighs in favor of the requested stay because a stay will conserve judicial and party resources while this Court resolves the transfer issue.  For example, staying the district court proceedings before the *Markman* hearing will ensure that Nintendo and Secure Axcess do not have to expend additional resources on duplicative *Markman* proceedings in a transferee court.

## IV.    POSITION OF OPPOSING COUNSEL

Counsel for Nintendo discussed its intent to file this motion with counsel for Plaintiff Secure Axcess.  Plaintiff's counsel indicated its intent to oppose this stay request and file an opposition. Smith Decl., ¶ 8; *see also supra* n.17.

## V.    CONCLUSION

For these reasons, Nintendo respectfully requests that this Court stay all proceedings in the district court pending this Court's ruling on Nintendo's petition for writ of mandamus, or alternatively, enter a temporary stay of the district court proceedings pending this Court's ruling on this Motion to Stay.

---

[17] Counsel for Nintendo also notified the DisplayLink Defendants' counsel of this motion.  In response, the DisplayLink Defendants' counsel indicated that the DisplayLink Defendants do not oppose the requested stay as to Nintendo, but do oppose a stay of the district court proceedings as to the DisplayLink Defendants, and further indicated that DisplayLink does not intend to file an opposition to this motion.

Dated: May 6, 2014

RESPECTFULLY SUBMITTED,

COOLEY LLP

By: _____

STEPHEN R. SMITH
LORI R. MASON

ATTORNEYS FOR PETITIONER
NINTENDO OF AMERICA INC.

Misc. Docket No. 2014-132

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IN RE NINTENDO OF AMERICA INC., MICRO ELECTRONICS, INC.,
HASTINGS ENTERTAINMENT, INC., GAMESTOP CORP., BEST BUY
STORES, L.P., BESTBUY.COM, LLC, KMART CORPORATION, TARGET
CORPORATION, AND TOYS "R" US-DELAWARE, INC.,

*Petitioners.*
_____

## CERTIFICATE OF INTEREST

Counsel for Petitioner Nintendo of America Inc. certifies the following:

1.      The name of every party or amicus represented by me is:

Nintendo of America Inc.

2.      There are no other real parties in interest represented by me.

3.      Nintendo of America Inc. is owned by its parent corporation Nintendo

Co., Ltd. Nintendo Co., Ltd., whose stock is publically traded in Japan, owns 100%

of Nintendo of America Inc.

4. The names of all law firms and the partners or associates that appeared for

Nintendo of America Inc. the district court or are expected to appear in this court

are:

Cooley LLP:  Stephen R. Smith, Lori R. Mason

Baker & McKenzie LLP:   Jay F. Utley, Omar D. Galaria, Daniel J.
O'Connor

Yarbrough Wilcox, PLLC:  Herbert A. Yarbrough III, Debra E. Gunter

Dated: May 6, 2014                    RESPECTFULLY SUBMITTED,

                                      COOLEY LLP

                                      By:

                                      STEPHEN R. SMITH

                                      ATTORNEYS FOR PETITIONER
                                      NINTENDO OF AMERICA INC.

Misc. Docket No. 2014-132

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IN RE NINTENDO OF AMERICA INC., MICRO ELECTRONICS, INC., HASTINGS ENTERTAINMENT, INC., GAMESTOP CORP., BEST BUY STORES, L.P., BESTBUY.COM, LLC, KMART CORPORATION, TARGET CORPORATION, AND TOYS "R" US-DELAWARE, INC.,

*Petitioners.*
_____

## DECLARATION OF STEPHEN R. SMITH

I, Stephen R. Smith, being at least eighteen years of age and having personal knowledge of the following, hereby declare as follows:

1.      I am a member of the bar of this Court and the principal attorney representing Petitioner Nintendo of America Inc. ("Nintendo") in this appeal.  I submit this declaration in support of Nintendo's Emergency Motion for Stay of District Court Proceedings Pending Ruling on Petition for Writ of Mandamus.

2.      All of the facts set out herein are, to the best of my knowledge, true and correct.

3.      On April 15, 2014, Nintendo filed in the district court an emergency motion to stay proceedings pending a ruling on Nintendo's writ petition ("district court motion to stay").

4.      On April 23, 2014, Plaintiff Secure Axcess filed an opposition to Nintendo's district court motion to stay.  The defendants in the joined case ("the DisplayLink Defendants") did not file a response.

5.      To date, the district court has not issued a ruling on Nintendo's district court motion to stay.

6.      Nintendo filed its responsive claim construction brief in the district court on May 1, 2014.

7.      To date, Secure Axcess has not issued any interrogatories or deposition notices to Nintendo in the district court proceedings.  My understanding is that Secure Axcess has also not yet issued any interrogatories or deposition notices to any other defendants.

8.      Counsel for Nintendo discussed its intent to file this motion with counsel for Plaintiff Secure Axcess and counsel for the DisplayLink Defendants. Plaintiff's counsel indicated its intent to oppose this motion and file an opposition. The DisplayLink Defendants' counsel indicated that the DisplayLink Defendants do not oppose the requested stay as to Nintendo, but do oppose a stay of the proceedings as to the DisplayLink Defendants, and further indicated that DisplayLink does not intend to file an opposition to this motion.

9.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 6, 2014, in Washington, D.C.

Respectfully submitted,

_/s/ Stephen R. Smith_
Stephen R. Smith
Cooley LLP
11951 Freedom Drive
Reston, VA 20190
Telephone: (703)456-8000
Facsimile: (703) 456-8100

_Attorney for Petitioner Nintendo of_
_America Inc._

3

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SECURE AXCESS, LLC, | |
|      Plaintiff, | |
| v. | |
| NINTENDO OF AMERICA INC., ET AL. | Case No. 2:13-cv-032-JRG (Lead Case) |
| ACELL CORPORATION, ET AL., | Case No. 2:13-cv-289-JRG |
|      Defendants. | JURY TRIAL DEMANDED |

## *EMERGENCY MOTION*

## EMERGENCY MOTION TO STAY PROCEEDINGS AND REQUEST FOR EXPEDITED BRIEFING

Defendant Nintendo of America Inc. ("Nintendo") respectfully moves this Court to stay all proceedings pending the United States Court of Appeals for the Federal Circuit's resolution of Nintendo's pending petition for writ of mandamus, which asks the Federal Circuit to vacate this Court's Order denying Defendants' motion to sever and transfer, and to remand with instructions to sever the claims against Nintendo and transfer those claims to the Western District of Washington. On April 15, 2014, the day after Nintendo's petition was docketed, the Federal Circuit ordered Plaintiff, Secure Axcess, to respond to Nintendo's petition no later than April 22, 2014, and further ordered that any reply by Nintendo is due no later than five days after Secure Axcess serves its response. *See* Exhibit A. The Federal Circuit emphasized that the parties should not anticipate any extensions of time. *Id.* at 2.

Nintendo respectfully submits that, consistent with the prior stay entered by the Court pending resolution of Defendants' motion to sever and transfer, a stay pending resolution of Nintendo's petition is likewise warranted to prevent prejudice to Nintendo and to conserve all

parties' and the Court's resources.  Opening claim construction briefs are currently due April 17, 2014, with the *Markman* hearing set for June 4.  Entering the requested stay will simplify the issues by giving the parties and the Court finality as to what claims will go forward in this Court, and which may be transferred, before completing *Markman* proceedings.  A stay of this limited duration also will not prejudice Secure Axcess.

Respectfully, Nintendo further submits that its petition will likely succeed on the merits. Well-established precedent holds that the customer-suit exception may be applied to facilitate severance and transfer of the claims against manufacturers from claims against mere sellers or resellers of the accused products.  Here, the Court found the factual predicates for severing the claims against Nintendo, recognizing Nintendo as the "true defendant" for purposes of infringement and validity and staying the case against the Retailer Defendants.  The Court nevertheless declined to sever the claims against Nintendo, finding that an "alternative solution" was warranted based on Plaintiff's allegations that higher damages may be available against the Retailer Defendants.  Nintendo respectfully submits, however, that these potential future damages issues, which may be mooted by trial of the liability issues, should not take precedence over Nintendo's venue rights.  The Court's ruling requires trial of the core liability issues, solely against Nintendo, in a clearly inconvenient forum.  The Federal Circuit is likely to intervene to prevent such a result.

## I.    BACKGROUND

On June 18, 2013, Nintendo and the Retailer Defendants in the lead case filed their Joint Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants ("Motion to Sever and Transfer") (Dkt. No. 61).  The Motion to Sever and Transfer requested that the Court sever and stay Plaintiff's claims against the Retailers and,

pursuant to 28 U.S.C. § 1404(a), transfer the claims against Nintendo to the Western District of Washington. The parties completed their briefing on the Motion to Sever and Transfer on August 26, 2013. (*See* Dkt. No. 83.)

On November 27, 2013, the Retailers filed an Emergency Opposed Motion to Stay the Case Schedule as it pertains to the Retailers. (Dkt. No. 120.)

On January 30, 2014, Nintendo and the Retailer Defendants filed an Emergency Motion to Stay Proceedings pending the Court's resolution of the Motion to Sever and Transfer. (Dkt. No. 130.) The Court granted the requested stay of the proceedings on February 10, 2014, agreeing that "a short stay pending resolution of the severance and transfer issues is likely to simplify the issues in this case" and would not unduly prejudice Plaintiff. (Dkt. No. 133 at 1.)

On March 7, 2014, the Court issued a Memorandum Opinion and Order, denying the Motion to Sever and Transfer and, conditioned on the Retailers stipulating to be bound by the verdict and rulings in this suit against Nintendo on issues of infringement and validity, ordering (1) bifurcation of the liability/validity issues from the issue of damages, and (2) a stay of the case against the Retailers until the Court decides the liability/validity issues.

On March 21, 2014, the Retailer Defendants filed a stipulation, agreeing to be bound by the verdict and rulings for or against Nintendo in this suit, whether issued by this Court or the Western District of Washington, on the issues of infringement and validity. (Dkt. No. 137.) On April 4, 2014, the Court entered a docket notice confirming that, having received the Retailers' stipulation called for in the Court's March 7 Order, the stay of the case against the Retailers is in full force and effect.

On April 11, 2014, Nintendo filed a petition for writ of mandamus with the United States Court of Appeals for the Federal Circuit. *See* Exhibit B. Nintendo's petition asks the Federal

Circuit to vacate this Court's March 7, 2014 Order and remand with instructions to sever the claims against Nintendo and transfer those claims to the Western District of Washington. On April 15, 2014, the Federal Circuit ordered Secure Axcess to respond to the mandamus petition within seven days. *See* Exhibit A.

## II.    LEGAL STANDARDS

This Court may stay trial proceedings pending resolution of a petition for writ of mandamus to the Court of Appeals. *See Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-4909, 2009 WL 1313193, at *2 (N.D. Cal. May 12, 2009) (staying all proceedings pending resolution of mandamus petition in related case); *Ruppert v. Principal Life Ins. Co.*, No. 06-cv-903, 2007 WL 2025233, at *8 (S.D. Ill. July 9, 2007) (staying order of transfer pending resolution of petition for writ of mandamus); *see also In re U.S. Dep't of Homeland Security*, 459 F.3d 565, 568 (5th Cir. 2006) (granting emergency motion to stay pending disposition of petition for writ of mandamus).

In evaluating a motion to stay pending disposition of a writ of mandamus, courts apply the same four-factor balancing test that governs stays pending direct appeal:  (1) the likelihood that the party seeking the stay will prevail on the merits of the petition; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed by a stay; and (4) the public interest in granting the stay.  *See Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).  Importantly, each of these factors need not be given equal weight. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir. 1990).  Rather, "the four stay factors can effectively merge," in that the court "assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *Id.*

4

## III.    ARGUMENT

Nintendo respectfully submits that a stay of proceedings pending the Federal Circuit's decision on Nintendo's writ petition is necessary and appropriate.  The sound reasoning employed by the Court to stay the case pending resolution of the underlying motion—so as to "simplify the issues in this case" and promote efficiency—applies equally now while the severance and transfer issues are pending before the Federal Circuit.  (*See* Dkt. No. 133.)

Nintendo respectfully maintains that its writ petition is likely to succeed on its merits because, having found that Nintendo is the "true defendant" for purposes of infringement and validity and staying the case as to the Retailers, the Court should have severed and transferred the claims against Nintendo pursuant to Section 1404(a).  Instead, the Court ordered that this case proceed to trial solely against Nintendo in a clearly inconvenient forum, contrary to existing district court and Federal Circuit precedent.

A stay is also warranted to prevent further prejudice to Nintendo and to conserve all parties' and the Court's resources while the Federal Circuit decides Nintendo's petition.  Absent the requested stay, Nintendo will be harmed by having to litigate issues on the merits in an inconvenient forum before its venue rights are finally resolved in the Federal Circuit.  The Court and all parties also risk wasting significant time and resources to decide claim construction issues when the case may ultimately be transferred to the Western District of Washington.

### A.  Nintendo Will Likely Prevail on the Merits of Its Writ Petition.

This Court specifically found that Nintendo is the "true defendant" with respect to the core issues of infringement and validity.  (Dkt. No. 135 at 11.)  The Court also recognized that resolution of infringement and validity may dispose entirely of Plaintiff's claims against the

Retailers, and so bifurcated damages from the liability issues and stayed the case as to the Retailers pending resolution of Nintendo's liability. (*Id.* at 13.)

In this exact posture, courts have consistently severed peripheral claims against retailer defendants from those asserted against a manufacturer and transferred the claims against the manufacturer to a more convenient venue. *See In re Nintendo*, Misc. No. 151, 544 F. App'x 934, 942 (Fed. Cir. Sept. 25, 2013) ("[T]he district court erred by not beginning its analysis by addressing whether the parties should have been severed for purposes of *facilitating transfer* of venue . . . .") (emphasis added); *MGT Gaming, Inc. v. WMS Gaming, Inc.*, No. 12-cv-741, 2013 WL 5755247, at *11 (S.D. Miss. Oct. 23, 2013) (explaining that determination of a motion to sever and transfer "will involve a consideration of 'whether the movants have made a clear showing that the *balance of convenience* and the interests of justice require the proposed actions'") (quoting *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 121 (S.D. Tex. 1971)). Nintendo respectfully submits that the Court should have followed this authority in deciding Defendants' Motion to Sever and Transfer and, accordingly, should have considered whether transfer of the claims against Nintendo is warranted under Section 1404(a).

The Court's analysis relied principally on the possibility that damages from the Retailers could be different than those available against Nintendo. This possibility, however, remains too remote and speculative to support denial of Nintendo's motion to sever and transfer. Depending on the outcome of the infringement and validity claims, Plaintiff's claims against the Retailers may never be tried. Even if the case reaches the damages phase, Plaintiff has not articulated a sound legal theory as to why damages against the Retailers would differ from those available against Nintendo. For example, Plaintiff's conjectures regarding the Retailers' sale of games and

accessories have no apparent connection to the patent-in-suit, which is limited to devices and methods that employ multiple screens.

Regardless, assuming this Court eventually has to decide damages, the scope of issues will be narrow in comparison to, and independent from, the infringement and validity determinations. Any efficiency that might be gained by this Court in retaining venue of the entire action is therefore speculative and minimal. The prospect of such minor efficiency does not outweigh the prejudice to Nintendo from having to litigate the core issues in an inconvenient forum. The convenience factors overwhelmingly point to the Western District of Washington as the appropriate venue in which to try Plaintiff's infringement claims against Nintendo's products.

Further, the Federal Circuit has recently shown a particular interest in motions to transfer venue, including in the context of a motion to sever claims against retailer defendants and transfer claims against the "true defendant" manufacturer. *See, e.g, In re Toyota Motor Co.*, No. 2014-113, 2014 U.S. App. LEXIS 6193 (Fed. Cir. Apr. 3, 2014); *Nintendo*, 544 F. App'x. at 941; *In re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013). Nintendo respectfully submits that this Court's Order runs contrary to the principles articulated by the Federal Circuit in *Nintendo* and *Toyota*, and also conflicts with the existing district court authority on this issue. Thus, Nintendo's petition raises issues ripe for review by the Federal Circuit.

Because Nintendo will likely succeed on the merits of its writ petition, this Court should stay proceedings pending a decision on Nintendo's petition by the Federal Circuit.

### B. A Stay Is Warranted to Prevent Harm to Nintendo and Conserve the Parties' and the Court's Resources.

As detailed in the Motion to Sever and Transfer, Nintendo has and continues to suffer prejudice by having to litigate this case in a clearly inconvenient forum. (*See* Dkt. No. 61 at 10

7

(the bulk of evidence relevant to infringement is located at Nintendo's Redmond, Washington headquarters)); *see also EMC*, 501 F. App'x at 975-76 ("Congress' intent 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense' may be thwarted where defendant is subject to extended litigation prior to resolution of its transfer motion.") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *Nintendo*, 544 F. App'x at 941 ("[T]his court has specifically recognized the importance of addressing motions to transfer at the outset of litigation.") (internal quotation marks omitted); *DietGoal Innovations LLC v. El Pollo Loco Inc*., No. 12-cv-568, 2013 WL 3760125, *1 (E.D. Tex. July 16, 2013) ("Timely motions to transfer venue 'should [be given] a top priority in the handling of [a case] . . . .'") (quoting *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003)).

Nintendo will be further prejudiced if forced to complete *Markman* proceedings in this Court even though liability may ultimately be tried in the Western District of Washington. Nintendo moved to sever and transfer early in the case so that it could obtain a ruling and any appropriate appellate review before this Court decided substantive issues such as claim construction. Nintendo also filed its writ petition promptly after issuance of the Court's Order denying the Motion to Sever and Transfer. Despite its diligence, however, Nintendo cannot realistically expect a decision from the Federal Circuit before the *Markman* hearing scheduled for June 4, 2014, or issuance of the Court's *Markman* order. Nintendo will be prejudiced if forced to litigate issues on the merits in an inconvenient forum before the Federal Circuit rules on its mandamus petition. *Cf. Codex Corp. v. Milgo Electronic Corp*., 553 F.2d 735, 738 (1st Cir. 1977) ("Venue rights, contrary, perhaps, to the view of the district court, which did not mention them at all, are important, particularly in patent litigation.").

A stay also serves all parties and the Court by conserving resources while the Federal Circuit decides Nintendo's petition. Rather than invest the Court's time and resources now to decide the claim construction issues raised by Nintendo, the prudent course is to enter a stay pending final resolution of the transfer issue. *See ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967) (explaining that a stay provides an important "means of avoiding unnecessary duplication of judicial machinery"). Absent a stay, if Nintendo's writ petition results in transfer of the case against Nintendo, Secure Axcess and Nintendo would have to expend significant additional resources if required to submit additional *Markman* briefing, or appear for an additional *Markman* hearing, before the transferee court. Staying all proceedings pending a decision on the petition for writ of mandamus is the most efficient way to ensure that after the Federal Circuit rules on the writ petition, the proceedings can go forward in a cohesive manner that does not prejudice Nintendo's venue rights.

### C. No Party Will Suffer Prejudice From a Stay.

Issuance of the requested stay will not prejudice any party. The Court has already stayed the case as to the Retailer Defendants pending resolution of infringement and validity. As for Plaintiff, it will suffer no prejudice from the requested stay. Secure Axcess has characterized itself as "a non-practicing entity" and acknowledged that it will seek only damages and not injunctive relief. (*See* Dkt. No. 69 at 6.) A stay will not cause business injury to Secure Axcess because it does not compete with Nintendo in the marketplace. *Cf. VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 13-cv-11, Dkt. No. 146 at 7 (E.D. Tex. Feb. 27, 2014) (finding that plaintiff's potential loss of market share and goodwill as a result of stay extending litigation weighed "slightly in favor of denying a stay"). Secure Axcess has also shown no urgency in

enforcing its patent against Nintendo, waiting nine months after receiving its interest in the patent before filing suit.  (*See* Dkt. No. 1, ¶ 22.)

## IV.   REQUEST FOR EXPEDITED BRIEFING

In light of the upcoming case deadlines, Nintendo respectfully requests that the Court order expedited briefing so that this Emergency Motion to Stay can be resolved as quickly as possible.  Accordingly, Nintendo requests that the Court order Plaintiff to file a response to this motion by April 21, 2014.  To facilitate early resolution of this motion, Nintendo hereby waives its right to file a reply to Plaintiff's opposition, meaning that Plaintiff will not require a sur-reply and briefing on this Motion may close when Plaintiff files its opposition.

## V.   CONCLUSION

For the foregoing reasons, Nintendo respectfully requests that the Court grant its request for expedited briefing as set forth above, grant this Emergency Motion to Stay all proceedings pending the Federal Circuit's decision on the petition for writ of mandamus, and grant Nintendo such other and further relief as the Court may deem appropriate.

Dated:  April 14, 2014

Respectfully submitted:

By: */s/ Jay F. Utley*
    Jay F. Utley
    Texas Bar No. 00798559
    BAKER & MCKENZIE LLP
    2300 Trammell Crow Center
    2001 Ross Avenue
    Dallas, TX 75201
    (214) 978-3000
    FAX:  (214) 978-3099
    Jay.Utley@bakermckenzie.com

    Daniel J. O'Connor (Lead Counsel)
    Illinois Bar No. 2086271
    Omar Galaria
    Illinois Bar No. 6303352

BAKER & MCKENZIE LLP
300 E. Randolph Street, Suite 5000
Chicago, IL 60601
(312) 861-2790
FAX: (312) 698-2325
Daniel.O'Connor@bakermckenzie.com
Omar.Galaria@bakermckenzie.com


Trey Yarbrough Bar No. 22133500
Debby E. Gunter Bar No. 24012752
YARBROUGH WILCOX GUNTER, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
(903) 595-3111
FAX: (903) 595-0191
trey@yw-lawfirm.com
debby@yw-lawfirm.com

**Attorneys for Defendant Nintendo of America Inc.**


## CERTIFICATE OF CONFERENCE

This is to certify that the undersigned counsel has complied with Local Rule CV-7(h) and has conferred with the parties' counsel in a good-faith attempt to resolve these matters without opposition. Counsel for Plaintiff and counsel for Defendant Nintendo of America Inc. conducted a conference via telephone on April 15, 2014, and were unable to reach an agreement on the matters opposed herein. The parties, through their counsel, participated in a meaningful discussion regarding their respective positions, but arrived at an impasse, resulting in the need for the Court's intervention and determination of this opposed Motion.

Counsel for Defendant Nintendo of America Inc. and counsel for the consolidated Defendants in *Secure Axcess, LLC v. Accell Corp. et. al.*, No. 2:13-cv-00289-JRG, likewise conducted conferences via telephone on April 14 and 15, 2014, and were unable to reach an agreement on the matters opposed herein. The parties, through their counsel, participated in a meaningful discussion regarding their respective positions, but arrived at an impasse, resulting in the need for the Court's intervention and determination of this opposed Motion. The Defendants in *Secure Axcess, LLC v. Accell Corp. et al.*, No. 2:13-cv-00289, are unopposed to a stay of proceedings in the Lead Case, *Secure Axcess, LLC v. Nintendo of America Inc. et al.*, No. 2:13-cv-032-JRG, but are opposed to a stay of proceedings in their case.

*/s/ Jay F. Utley*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 15th day of April, 2014.  All other counsel not deemed to have consented to service in such manner will be served via facsimile transmission and/or first class mail.

*/s/ Jay F. Utley*

# Exhibit A

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**IN RE NINTENDO OF AMERICA, INC., MICRO ELECTRONICS, INC., HASTINGS ENTERTAINMENT, INC., GAMESTOP CORP., BEST BUY STORES, L.P., BESTBUY.COM, LLC, KMART CORPORATION, TARGET CORPORATION, TOYS 'R' US-DELEWARE, INC.,**
*Petitioners.*

———————————

2014-132

———————————

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in Nos. 2:13-cv-00032-JRG and 2:13-cv-00289-JRG, Judge J. Rodney Gilstrap.

———————————

## ON PETITION

———————————

PER CURIAM.

## O R D E R

Nintendo of America, Inc. et al. submit a petition for a writ of mandamus directing the United States District Court for the Eastern District of Texas to vacate its March 7, 2014 order and grant their motion to sever and transfer the case against Nintendo to the United States District Court for the Western District of Washington.

2                              IN RE NINTENDO OF AMERICA, INC.

Upon consideration thereof,

IT IS ORDERED THAT:

Secure Axcess, LLC is directed to respond to the
petition no later than seven days after the date of issu-
ance of this order.  Any reply by petitioners is due no later
than five days from the date of service of the response.
The parties should not anticipate any extensions of time.

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

s19

# Exhibit B

Misc. No. 2014-____

# United States Court of Appeals
# for the Federal Circuit

IN RE NINTENDO OF AMERICA INC., MICRO ELECTRONICS, INC.,
HASTINGS ENTERTAINMENT, INC., GAMESTOP CORP., BEST BUY
STORES, L.P., BESTBUY.COM, LLC, KMART CORPORATION, TARGET
CORPORATION, AND TOYS "R" US-DELAWARE, INC.,
*Petitioners*.

*On Petition for a Writ of Mandamus to the U.S. District Court for the
Eastern District of Texas in Case No. 2:13-CV-32
Judge Rodney Gilstrap*

## PETITION FOR WRIT OF MANDAMUS

LORI R. MASON
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
(650) 843-5000 (telephone)
(650) 849-7400 (facsimile)

STEPHEN R. SMITH
COOLEY LLP
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000 (telephone)
(703) 456-8100 (facsimile)

*Attorneys for Petitioner Nintendo of America Inc.*

JAY F. UTLEY
BAKER & MCKENZIE LLP
2300 Trammel Crow Center
2001 Ross Avenue
Dallas, TX 75201
(214) 978-3000 (telephone)
(214) 978-3099 (facsimile)

*Attorneys for Petitioners Nintendo of America Inc., Micro Electronics, Inc.,
Hastings Entertainment, Inc., GameStop Corp., Best Buy Stores, L.P.,
BestBuy.com, LLC, Kmart Corporation, Target Corporation, and Toys "R" US-
Delaware, Inc.*

April 11, 2014

## Certificate of Interest for Nintendo of America Inc.

1. The full name of every party represented by me is Nintendo of America Inc.

2. There are no other real parties in interest represented by me.

3. Nintendo of America Inc. is owned by its parent corporation Nintendo Co., Ltd. Nintendo Co., Ltd., whose stock is publicly traded in Japan, owns 100% of Nintendo of America Inc.

4. The names of all law firms and attorneys that appeared for Nintendo of America, Inc. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Omar D. Galaria, Jay F. Utley, Daniel J. O'Connor

Yarbrough Wilcox, PLLC:  Debra E. Gunter

Herbert A. Yarbrough III

Cooley LLP: Stephen R. Smith, Lori R. Mason


April 11, 2014
Date                                                           Stephen R. Smith

Certificate of Interest for Micro Electronics, Inc.

    1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

    2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

    3. Micro Electronics, Inc. has no parent company and no publicly held company owns 10% or more of Micro Electronics, Inc.'s stock.

    4. The names of all law firms and attorneys that appeared for Micro Electronics, Inc. in the district court or are expected to appear in this court are:

    Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

    Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

-ii-

## Certificate of Interest for Hastings Entertainment, Inc.

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Hastings Entertainment, Inc. has no parent company and no publicly held company owns 10% or more of Hastings Entertainment, Inc.'s stock.

4. The names of all law firms and attorneys that appeared for Hastings Entertainment, Inc. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

Certificate of Interest for GameStop Corp.:

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. There are no parent Corporations or any publicly held companies that own 10 percent or more of the stock of GameStop Corp.

4. The names of all law firms and attorneys that appeared for GameStop Corp. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III


April 11, 2014
Date

Jay F. Utley

## Certificate of Interest for Best Buy Stores, L.P.

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Best Buy Stores, L.P. is a Virginia limited partnership with one general partner, BBC Property Co., and one limited partner, BBC Investment Co., both of which are wholly-owned subsidiaries of Best Buy Co., Inc., a publicly traded company. No publicly held company owns 10% or more of Best Buy Co., Inc.'s stock.

4. The names of all law firms and attorneys that appeared for Best Buy Stores, L.P. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

-v-

## Certificate of Interest for BestBuy.com, LLC

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. BestBuy.com, LLC is a Virginia limited liability company with one member, Best Buy Stores, L.P. Best Buy Stores, L.P. is a limited partnership with one general partner, BBC Property Co., and one limited partner, BBC Investment Co., both of which are wholly-owned subsidiaries of Best Buy Co., Inc., a publicly traded company. No publicly held company owns 10% or more of Best Buy Co., Inc.'s stock.

4. The names of all law firms and attorneys that appeared for BestBuy.com, LLC in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III


April 11, 2014
Date

Jay F. Utley

-vi-

## Certificate of Interest for Kmart Corporation

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Kmart Corporation is a wholly-owned subsidiary of Sears Holding Corporation, a publicly traded company.

4. The names of all law firms and attorneys that appeared for Kmart Corporation in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D.
Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and

Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

<u>Certificate of Interest for Target Corporation</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Target Corporation is a publicly traded corporation and has no parent corporation. No publicly held corporation owns 10% or more of its stock.

4. The names of all law firms and attorneys that appeared for Target Corporation in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D.
Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and Herbert A. Yarbrough, III

<u>April 11, 2014</u>
Date

Jay F. Utley

-viii-

<u>Certificate of Interest for Toys "R" Us-Delaware, Inc.</u>

1. The full names of every party represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

2. The other real parties in interest represented by me are: Best Buy Stores, L.P.; BestBuy.com, LLC; GameStop Corp.; Hastings Entertainment, Inc.; Kmart Corporation; Micro Electronics, Inc.; Target Corporation; Toys "R" Us-Delaware, Inc.; Nintendo of America Inc.

3. Toys "R" Us-Delaware, Inc.'s parent corporation is the privately-held Toys "R" Us, Inc.

4. The names of all law firms and attorneys that appeared for Toys "R" Us-Delaware, Inc. in the district court or are expected to appear in this court are:

Baker & McKenzie LLP: Jay F. Utley, Daniel J. O'Connor, and Omar D. Galaria

Yarbrough Wilcox, PLLC: Debra E. Gunter, and

Herbert A. Yarbrough, III

April 11, 2014
Date

Jay F. Utley

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..............................................................................................1

RELIEF SOUGHT ...........................................................................................3

ISSUES PRESENTED......................................................................................4

STATEMENT OF FACTS ..............................................................................5

     A.    Nintendo Has No Connection to Texas...............................................6

     B.    Secure Axcess Has Minimal Ties to the Eastern District of Texas.................................................................................................6

     C.    Secure Axcess Named Eleven Retailer Defendants Who Have No Connection to the Underlying Infringement and Validity Issues, and Only a Tenuous Connection to Texas. ..............................7

     D.    Nintendo and the Retailer Defendants Moved To Sever and Transfer the Claims Against Nintendo Out of the Eastern District of Texas. ..................................................................................8

     E.    The District Court Failed To Apply the "Customer Suit Exception" and Instead Applied Its Own Unique "Alternative Solution" To Keep the Case in the Eastern District of Texas..............9

STANDARD OF REVIEW ...........................................................................12

REASONS WHY THE WRIT SHOULD ISSUE ..................................................13

I.     The Writ Should Issue Because the District Court's Analysis Effectively Eliminates the Customer-Suit Exception in Cases Involving Retailer Defendants....................................................................14

II.     The Writ Should Issue Because the District Court's Reliance on Damages as a Basis Not to Apply the Customer-Suit Exception Was Clearly Erroneous. .................................................................................20

     A.    The District Court Clearly Erred in Finding the Claims Against the Retailer Defendants Were Not Peripheral Based on Damages Issues. ................................................................................21

# TABLE OF CONTENTS

Page

B.      The District Court Applied the Wrong Test to Determine
        Whether the Second *Shifferaw* Factor Was Met. ...............................25

III.    The Writ Should Issue Because the District Court's Decision To Treat
        the Convenience of Nintendo as a Secondary Factor Was Error. ................27

CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Bowman v. Monsanto Co.*,
    133 S. Ct. 1761 (2013) ......................................................................................22

*Codex Corp. v. Milgo Elec. Corp.*,
    553 F.2d 735 (1st Cir. 1977) ...................................................................... 15, 17

*Corry v. CFM Majestic Inc.*,
    16 F. Supp. 2d 660 (N.D. Va. 1998) ....................................................................19

*In re BP Lubricants USA Inc.*,
    637 F.3d 1307 (Fed. Cir. 2011) ............................................................................13

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ................................................................... 13, 14

*In re Nintendo Co.*,
    544 F. App'x 934 (Fed. Cir. 2013) ................................................ 13, 19, 27, 28

*In re Toyota Motor Corp.*,
    No. 2014-113 (Fed. Cir. Apr. 3, 2014) ......................................................... 20, 28

*In re TS Tech. USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ................................................................... 13, 14

*Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*,
    No. 11-cv-234, 2012 U.S. Dist. LEXIS 114503 (E.D. Tex. May 30, 2012) .......22

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
    995 F.2d 1566 (Fed. Cir. 1993) ............................................................................22

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................... 16, 26

*Koh v. Microtek Int'l, Inc.*,
    250 F. Supp. 2d 627 (E.D. Va. 2003) ...................................................... 16, 19, 20

*LG Elecs., Inc. v. Asustek Computers*,
    126 F. Supp. 2d 414 (E.D. Va. 2000) ...................................................... 16, 22, 29

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
   138 F. Supp. 2d 574 (D.N.J. 2001) ........................................................ 16, 20, 26

*Lugus IP LLC v. Volvo Car Corp.*,
   No. 11-cv-811, 2012 WL 1715983 (E.D. Va. May 15, 2012) ...................... 22, 29

*MGT Gaming, Inc. v. WMS Gaming, Inc.*,
   --- F. Supp. 2d ----, No. 12-cv-741, 2013 WL 5755247 (S. D. Miss. Oct. 23, 2013) ......................................................................................................27

*Mobil Oil Corp. v. W.R. Grace & Co.*,
   334 F. Supp. 117 (S.D. Tex. 1971) ......................................................................28

*Oplus Techs., Ltd., v. Sears Holding Corp.*,
   No. 11-cv-8539, 2012 U.S. Dist. LEXIS 83597 (N.D. Ill. June 15, 2012) .........22

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008)..............................................................................................22

*Round Rock Research, LLC v. Oracle Corp.*,
    No. 11-cv-332, 2011 WL 5600363 (E.D. Tex. Oct. 21, 2011).................... 19-20

*Shifferaw v. Emson USA*,
   No. 09-cv-54, 2010 WL 1064380 (E.D. Tex., Mar. 18, 2010)................... passim

*Siemens Aktiengesellschaft v. Sonotone Corp.*,
   370 F. Supp. 970 (N.D. Ill. 1973) ................................................................ 16, 22

*Tomita Techs. USA, LLC v. Nintendo Co.*,
   No. 11-cv-4256, 2013 WL 4101251 (S.D.N.Y. Aug. 14, 2013) ........................23

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
   No. 04-cv-2391, 2005 WL 2415960 (N.D. Tex. Sept. 20, 2005)............... passim

*TV Interactive Data Corp. v. Sony Corp.*,
   929 F. Supp. 2d 1006 (N.D. Cal. 2013)...............................................................23

*William Gluckin & Co. v. Int'l Playtext Corp.*,
   407 F.2d 177 (2d Cir. 1969)................................................................... 16-17, 29

## Statutes

28 U.S.C. § 1404(a) .......................................................................... passim

## Rules

Fed. R. Civ. P. 21 .......................................................................................................8

**INTRODUCTION**

The district court denied a motion to sever and transfer claims against

Nintendo of America Inc. ("Nintendo") from claims against retailers named as

defendants in the same case by plaintiff Secure Axcess.  The decision departs from

this Court's guidance and from a host of unanimous district court decisions, which

instead applied the customer-suit exception to sever and transfer.  The district court

found that Nintendo was the "true defendant" as to infringement and invalidity,

staying the case against the retailers, but used the possibility of an unlikely

situation, differing measures of damages on the same products, to deny severance

and transfer and refuse to apply the customer-suit exception.  Left intact, this

holding will effectively create a loophole permitting plaintiffs to circumvent the

customer-suit exception by simply naming retailers as defendants in any suit

against a manufacturer and alleging the future possibility of different measures of

damages on the same products.

The customer-suit exception, however, favors determining venue based on

convenience for the "true defendant" regardless of where a patentee may have filed

a case against customer defendants.  The district court's decision arose from its

view that application of the customer-suit exception "should be tempered when

severance of the manufacturer is made primarily to facilitate transfer," especially

1

when the suit is filed in an "experienced" patent court like the Eastern District of Texas.

This erroneous view led the district court to what it termed an "alternative solution"—instead of severing and transferring the claims against Nintendo, it would bifurcate the liability and damages phases of the case, stay the case as to the retailers, and retain venue of the entire action. In crafting this "alternative solution," the district court concluded that the claims against the retailers should not be severed because, although they are peripheral to infringement and validity, they may not be peripheral with respect to damages. The district court reasoned that it might be *possible* that plaintiff, assuming that it prevails on its infringement claims, *might* be able to collect an incrementally higher damages award from the retailer defendants than it could from Nintendo. The district court's analysis is fundamentally flawed, among other reasons, because of the exhaustion doctrine, which permits only one recovery of patent damages.

The district court's analysis runs counter to this Court's guidance and the uniform body of district court precedent regarding severance and transfer. It also, without any legal or factual analysis, accepts and relies on Plaintiff's dubious theory that higher damages may be available from the Retailer Defendants than from Nintendo.

2

In addition, the district court's ruling fundamentally undermines the customer-suit exception. The result of the district court's analysis would mean a patentee's chosen forum could almost never be challenged—no matter how inconvenient for the true defendant, or how divorced the customers are from the merits of a case—so long as retailer customers were named as defendants in the suit. This result would effectively destroy the "customer suit exception" in the severance-and-transfer context. It would also provide a roadmap for future plaintiffs to name a host of retailers as token defendants (and to allege differing damages on the same products) to immunize their chosen venue against transfer. The writ should issue to prevent this unprecedented and unwarranted result.

## RELIEF SOUGHT

Nintendo and the Retailer Defendants respectfully request that the Court grant this petition for a writ of mandamus and vacate the district court's March 7 order denying Defendants' motion to sever and transfer the claims against Nintendo. Petitioners further request that the Court remand with instructions to sever the claims against Nintendo and transfer those claims to the Western District of Washington, and to continue the stay of the claims against the Retailer Defendants.

## ISSUES PRESENTED

Did the district court clearly abuse its discretion in refusing to sever the patent infringement claims against Nintendo from the claims against retail sellers or resellers of accused Nintendo products and transfer the claims against Nintendo to the Western District of Washington? Specifically:

1.      Did the district court erroneously refuse to apply the customer-suit exception to sever and transfer the claims against the true defendant, Nintendo?

2.      Did the district court err as a matter of law in concluding that the claims against the Retailer Defendants were not peripheral based on Plaintiff's speculation that higher damages may be available against the Retailer Defendants, even though the court concluded that Nintendo is the true defendant as to infringement and validity, and even though it stayed the claims against the Retailer Defendants until infringement and validity are resolved?

3.      Did the district court err as a matter of law by analyzing whether adjudicating infringement and validity would *necessarily* resolve all claims rather than whether it would *potentially* do so?

4.      Did the district court clearly abuse its discretion by failing to analyze whether the interests of justice and convenience of the parties warrant transfer of the claims against Nintendo to the Western District of Washington under 28 U.S.C.

§ 1404(a), especially in light of the district court's conclusion that Nintendo is the true defendant as to infringement and validity?

## STATEMENT OF FACTS

Plaintiff Secure Axcess filed a patent infringement action in the Eastern District of Texas against Nintendo of America Inc. and eleven Retailer Defendants that sell or resell the accused Nintendo products.[1] A15-32. Early in the case, Nintendo asked the district court to sever the claims against Nintendo from the claims against the Retailer Defendants and transfer the claims against Nintendo to the Western District of Washington. A46-66. The district court "agree[d] with Nintendo that it is the 'true defendant'" as to infringement and validity and that the claims against the Retailer Defendants are peripheral as to those core issues. A11. The court then bifurcated the liability and invalidity issues from the damages issues and stayed the claims against the Retailer Defendants pending a determination on infringement and validity against Nintendo. A13. Yet the district court refused to take the final step of severing the claims against Nintendo, and declined even to consider whether those claims should be transferred to the Western District of Washington, which is the proper and clearly more convenient venue to try the claims against Nintendo. A12 n.6, 13.

---

[1] Secure Axcess later amended its complaint to add Nintendo Co., Ltd., Nintendo's Japanese parent company, and another Amazon entity, Amazon.com, Inc., as defendants. A365-413.

### A.     Nintendo Has No Connection to Texas.

Nintendo's parent company, Nintendo Co., Ltd., develops and designs a line of popular handheld gaming products under the Nintendo DS brand—including the Nintendo DS, Nintendo DS Lite, Nintendo DSi, Nintendo DSi XL, Nintendo 3DS, and Nintendo 3DS XL (the "accused products") in Japan.  A194, ¶¶ 3-5.  Nintendo imports, markets, sells, and distributes the accused products to U.S. retailers. A194, ¶ 4.

Nintendo is incorporated in the State of Washington and has its principal place of business in Redmond, Washington, which is located in the Western District of Washington.  A193, ¶ 2; A196, ¶ 13.  Nintendo's Redmond headquarters is the strategic center of its business.  A194, ¶ 7.  Nintendo's key decisions, including those related to sale and marketing of the accused products, occur in Redmond.  *Id.*  Nintendo maintains technical, marketing, and financial documents related to the accused products in Redmond.  A194-95, ¶¶ 8-9.

Nintendo does not operate any office in Texas, employ anyone in Texas, or maintain any documents in Texas.  A195, ¶ 10.

### B.     Secure Axcess Has Minimal Ties to the Eastern District of Texas.

Secure Axcess, a self-designated "non-practicing entity," is a Texas limited liability company.  A228; A242, ¶ 4.  Beyond its corporate form, however, Secure Axcess has no meaningful connection to the Eastern District of Texas.  None of its

6

executives or relevant witnesses reside in the Eastern District, and many do not reside in Texas.  A71-72, ¶¶ 24-36.  The company President resides in Omaha, Nebraska, which, until Defendants moved to sever and transfer, was designated as Secure Axcess's "Principal Office" in its Texas corporate filings.  A242-43, ¶ 10, 286-88.

Secure Axcess now rents a small, 200-square-foot virtual office in Plano, Texas that it claims as its principal place of business.  A53, 136, 242, ¶¶ 7-8.  Secure Axcess alleges that one executive "primarily" works out of this office, but this individual lives in Austin, Texas, three and half hours away from Plano.  A241, ¶ 2, 72, ¶ 31.  Secure Axcess has not identified any specific relevant evidence maintained at the Plano office.  Further, Secure Axcess's business is managed by a company located in Wilmington, Delaware.  A71, ¶ 21, 141.

### C. Secure Axcess Named Eleven Retailer Defendants Who Have No Connection to the Underlying Infringement and Validity Issues, and Only a Tenuous Connection to Texas.

In addition to Nintendo, Secure Axcess also named as defendants eleven retailers that sell or resell the accused Nintendo products.  These Retailer Defendants have no role in, participation in, or knowledge of the development, design, manufacture, or importation of the accused products.  A198-215.  None of the Retailer Defendants have ever received any technical documents relating to the hardware, software, or functionality of the accused products.  A198-215.  It is

7

undisputed that the Retailer Defendants have no evidence—beyond what is already available from Nintendo—relevant to the core issues of infringement and validity.

Some of these Retailer Defendants have ties to the State of Texas, but no meaningful ties to the Eastern District.  Two Retailer Defendants have their principal place of business in Texas, but for both, it is nearly 200 miles away from the Marshall courthouse and outside the Eastern District.  A55, 200, 202.

> **D.  Nintendo and the Retailer Defendants Moved To Sever and Transfer the Claims Against Nintendo Out of the Eastern District of Texas.**

The case has only the most tenuous of connections with the Eastern District of Texas.  None of the parties are headquartered in the Eastern District.  A54-55, 198-215.  None of the parties' executives or relevant employees reside in the Eastern District.  A53, 61.  No witnesses reside in the Eastern District.  A62.  No relevant evidence can be found in the Eastern District.  A59.

Given these facts, Defendants moved to sever the claims against Nintendo and to transfer those claims to the Western District of Washington under Federal Rules of Civil Procedure 21 and 28 U.S.C. § 1404(a).  A46-66.  Defendants relied on an unbroken line of precedent in which courts have severed peripheral claims against retailer defendants from those asserted against a manufacturer and transferred the claims against the manufacturer to a more convenient venue.

Defendants later moved to stay the case while their motion to sever and transfer was pending. A482-504. The district court granted the stay, concluding: "a short stay pending resolution of the severance and transfer issues is likely to simplify the issues in this case" and would not prejudice Plaintiff. A480-481.

### E. The District Court Failed To Apply the "Customer Suit Exception" and Instead Applied Its Own Unique "Alternative Solution" To Keep the Case in the Eastern District of Texas.

On March 7, 2014, the district court denied the joint motion by Nintendo and the Retailer Defendants to sever and transfer the claims against Nintendo to the Western District of Washington. A1-14.

The district court recognized the long line of cases ordering severance and transfer of claims against a manufacturer pursuant to the "customer-suit exception" doctrine. A5. This doctrine developed as an exception to the first-to-file rule, directing courts to give precedence to a manufacturer's later-filed declaratory judgment action over an earlier-filed suit by a patentee against customers because the manufacturer is the "true defendant" in the patentee's customer suit. A4-5. The exception allows a defendant manufacturer to litigate infringement and validity in the venue of its choice, while the claims against the customers are stayed in the patentee-plaintiff's chosen forum.

The district court recognized that many district courts (including the Eastern District of Texas) have applied the customer-suit exception to sever and transfer

claims against the manufacturer when the manufacturer and its retailer customers are sued in the same case. A5. The court also recognized that district courts have applied the customer-suit exception to sever-and-transfer motions using the three-factor test set forth in *Shifferaw v. Emson USA*, No. 09-cv-54, 2010 WL 1064380, at *1 (E.D. Tex., Mar. 18, 2010): (1) whether the remaining claims are "peripheral" to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims. A8. The district court, however, decided to take a different approach in which it would consider the third factor only if it concluded that the first two factors were met. Because the court concluded that factors (1) and (2) were not met, it never considered factor (3), whether the Western District of Washington would be a more convenient venue.

The court concluded under the first factor that the claims against the Retailer Defendants are not peripheral. It reached this conclusion despite finding:

- Nintendo is the "true defendant" and the Retailer Defendants are only peripheral as to infringement and validity;

-  "Nintendo is the sole manufacturer in the United States of the only accused product … and sells it wholesale to the Retailer defendants"[2];

---

[2] As noted above, Nintendo Co., Ltd. is actually responsible for the manufacture of the accused products, which occurs outside the United States. Regardless, the key

- The Retailer Defendants have no role in designing the accused product and "likely have very little to offer in the way of evidence regarding the underlying technology of the accused devices or the substantive aspects of the infringement case"; and

- The Retailer Defendants were willing to stipulate to be bound by the findings against Nintendo as to infringement and validity.  A2, 9-11.

The district court found the claims against the Retailer Defendants should not be severed and transferred based primarily on its analysis of how issues relating to damages applied to the first and second *Shifferaw* factors.

Regarding the first *Shifferaw* factor, the district court found that the retailer claims were not peripheral based on speculation that the damages against the Retailer Defendants could be higher than the damages against Nintendo.  The court reasoned that the damages could differ because (1) retail prices are higher than wholesale prices, and (2) Retailer Defendants may sometimes bundle games and accessories for sale with Nintendo DS products (which, in the district court's analysis, can lead to higher damages against the retailers than against the manufacturer due to convoyed sales).

---

point is that the Retailer Defendants have no involvement in or knowledge of the manufacturing of the accused products.

11

The district court also concluded the second *Shifferaw* factor was not satisfied because, even if the claims against Nintendo are resolved, there could still be issues regarding damages as to the Retailer Defendants. It based this conclusion on a hypothetical future scenario in which: (1) Nintendo's products would be found to infringe at least one valid claim; and (2) Secure Axcess could, and thus *possibly* would, choose to seek damages against the Retailer Defendants in the hope that it could get higher damages than it could from Nintendo. A9-10.

The court acknowledged that this scenario would be unusual and undertook no analysis to substantiate the likelihood that this chain of events would actually come to fruition. Nonetheless, the district court reasoned that if Secure Axcess pursued that route, returning to the Eastern District of Texas to litigate damages against the Retailer Defendants would "significantly frustrate[]" the goals of judicial economy. A7-8. Perceiving an "undesirable dichotomy of potential outcomes," the court adopted an "alternative solution" to applying the customer-suit exception to sever and transfer, instead retaining the claims against Nintendo, bifurcating infringement and validity from damages, and staying the case against the Retailer Defendants pending resolution of infringement and validity. A8.

## STANDARD OF REVIEW

"The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power." *In re TS Tech. USA*

*Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). A "clear abuse" of discretion occurs where, as here, the court below reached a "patently erroneous result." *Id.* at 1319. Although the decision whether to sever is one as to which the district court has discretion, the court must exercise that discretion "within the boundaries set by relevant statutes and precedent." *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012). In ruling on a motion to sever and transfer, a "district court abuses its discretion if it relies on an erroneous conclusion of law." *Id.* Mandamus may issue "to further supervisory or instructional goals where issues are unsettled and important." *In re Nintendo Co.*, 544 F. App'x 934, 936 (Fed. Cir. 2013) (citing *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011)).

Where a writ of mandamus is the only means available to correct a patently erroneous result, the right to a writ of mandamus is "clear and indisputable," as required for the writ's issuance. *In re TS Tech.*, 551 F.3d at 1318-19.

## REASONS WHY THE WRIT SHOULD ISSUE

This Court should issue a writ of mandamus because the district court clearly erred by refusing to sever and transfer the claims against Nintendo, the recognized "true defendant" in this case. The decision employs faulty legal analyses and, absent correction, will force Nintendo to try all issues against it in a clearly inconvenient forum. The court's unsupported refusal to apply the customer-suit exception effectively created a blanket rule of "retailer-suit

immunity" that would foreclose applying the customer-suit exception in virtually every patent case involving retailer defendants. Any patentee could sue the "true-defendant" manufacturer in an inconvenient forum and keep them there merely by adding retailer defendants.

A writ of mandamus is the only remedy available to Nintendo. An appeal from a final judgment will not remedy Nintendo's harm. *See In re EMC Corp.*, 677 F.3d at 1355; *In re TS Tech.*, 551 F.3d at 1322 ("[I]t is clear under Fifth Circuit law that a party seeking mandamus for a denial of transfer clearly meets the 'no other means' requirement."). Following final judgment in Texas, Nintendo would be unable to show that it would have won the case had it been litigated in the Western District of Washington and will have already shouldered the burden of litigating in an inconvenient forum. *In re TS Tech.*, 551 F.3d at 1322.

**I.     The Writ Should Issue Because the District Court's Analysis Effectively Eliminates the Customer-Suit Exception in Cases Involving Retailer Defendants.**

A writ should issue because the district court reached the clearly erroneous decision that a plaintiff can keep claims against a true-defendant manufacturer in an inconvenient forum simply by suing a retailer who resells the accused products. The district court's reliance on damages to refuse to sever represents a sharp break with cases applying the customer-suit exception to protect the interest of the true-defendant manufacturer in litigating in a convenient forum. Under the district

14

court's analysis, any court could retain claims instead of severing and transferring based merely on the speculative and remote possibility that (1) a plaintiff could someday choose to seek damages against retailers rather than the manufacturer, and (2) damages between the retailers and manufacturer would not be common. This decision, if left undisturbed, would allow a plaintiff to secure its preferred venue in a suit against a true-defendant manufacturer by simply adding retailer defendants.  In effect, the district court created a retailer-suit immunity to application of the consumer-suit exception to sever-and-transfer motions.

The customer-suit exception was designed to address the precise procedural challenge faced by the district court, *i.e.*, how to resolve venue issues when the same infringement claims are pending at the same time against a manufacturer and its retailer customers.  The customer-suit doctrine recognizes that because the manufacturer is the "true defendant" in the case against the retailer, the threshold liability claims against the manufacturer should be decided before reaching the secondary issue of the retailers' liability.  *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977) ("At the root of the [customer-suit exception] is the recognition that, in reality, the manufacturer is the true defendant in the customer suit… [I]t is a simple fact of life that a manufacturer must … avoid the damaging impact of an adverse ruling against its products.").  In the first-to-file context, because the manufacturer is the true defendant, the manufacturer's chosen

forum is given precedence, even though typical first-to-file analysis would favor the patentee's chosen forum in the first-filed litigation.  *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

The courts have uniformly applied the customer-suit exception to sever and transfer the claims against a manufacturer to a more convenient forum when a plaintiff sues both the manufacturer and its retailer customers in the same court. *See Shifferaw v. Emson USA*, No. 09-cv-54, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010) (citing *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 04-cv-2391, 2005 WL 2415960, at *4-7 (N.D. Tex. Sept. 20, 2005)); *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 631-32 (E.D. Va. 2003); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D.N.J. 2001); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 421-22 (E.D. Va. 2000)); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F. Supp. 970, 972 (N.D. Ill. 1973) ("Were the rule otherwise, a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged wrongdoing.") (internal citation omitted).  This is a natural and logical application of the customer-suit exception, which is a flexible doctrine to be applied consistently with the § 1404(a) convenience factors. *See William Gluckin & Co. v. Int'l Playtext Corp.*, 407 F.2d 177, 180 (2d Cir.

1969) (customer-suit exception analysis properly took into account the "balanc[e] of convenience of the parties and witnesses").

The district court should have applied the customer-suit exception in this case to sever and transfer the claims against Nintendo to the clearly more convenient forum of the Western District of Washington.  Departing from well-established precedent, the district court instead concluded that, rather than severing and transferring the case against Nintendo, it would bifurcate liability and damages, retain the case in the Eastern District of Texas (without evaluating the convenience factors), and stay the claims against the Retailer Defendants.  This "alternative solution," as the district court referred to it, blatantly disregards Nintendo's venue rights.  A8.  *See Codex*, 553 F.2d at 738 ("Venue rights, contrary, perhaps, to the view of the district court, which did not mention them at all, are important, particularly in patent litigation").  The district court erred by not considering whether Nintendo has a right to transfer the claims against it to the Western District of Washington.  *See* Section III below.

The district court's reliance on damages to avoid the customer-suit exception creates a retailer exemption that would swallow the customer-suit exception in the context of severance and transfer.  Under the district court's new bright-line rule that courts need not "not reach the issue of severance and transfer" where "the scope and degree of damages are not common."  A10.  Thus, any court could retain

core claims instead of severing and transferring to a more convenient venue based on the theoretical and remote possibility that a plaintiff could someday chose to seek damages against other defendants rather than the manufacturer.

The district court declined to sever and transfer based primarily on the possibility that the amount of damages against Nintendo may be less than against the Retailer Defendants because of higher retail prices and the retailers' sale of accessory items that Plaintiff may seek to capture as "convoyed sales." But this possibility is present in almost every infringement action against a manufacturer and its retailer customers. Thus, by the district court's logic, there will almost always be a possibility that the plaintiff will allege that retail prices or potential "convoyed sales" will eventually be found to distinguish the damages available from particular defendants. Allowing courts to decline severance and transfer based on these run-of-the-mill facts would reserve the severance-and-transfer remedy for only the exceptional case where defendants could *prove* at the time the complaint was filed that damages would be common between the manufacturer and the retailers. That is not the law.

The district court further erred by concluding that the remedy of severance and transfer "should be reserved for that small subset of cases where an attempt to manipulate venue is clear." A7. This is contrary to this Court's clear guidance that district courts must consider "whether the parties should have been severed for

purposes of *facilitating transfer* of venue." *In re Nintendo*, 544 F. App'x at 941
(emphasis added). Venue manipulation is not part of the *Shifferaw* three-factor
test, a test the district court did not take issue with and purported to apply. Nothing
in the case law requires a showing of manipulation for a true-defendant
manufacturer to invoke the right to severance and transfer.[3] *See Toshiba Corp.*,
2005 WL 2415960, at *5-8 (ordering severance and transfer without suggesting
venue manipulation is required); *Shifferaw*, 2010 WL 1064380, at *6 (same); *Koh*,
250 F. Supp. 2d at 632-33 (same). What is more, the district court's "alternative
solution" invites venue manipulation by incentivizing patentees to add token
retailer defendants to secure their preferred forum beyond the reach of § 1404(a).
*See Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664-65 (N.D. Va. 1998).

Finally, the district court also rested its decision on its own experience in
patent cases, another rationale that would apply in every case. This is at best a
neutral factor given that the Western District of Washington is equally equipped
and experienced in patent litigation. A62, 73-74, ¶¶ 45-46, 177-89. *See Round*

---

[3] Even if some showing of venue manipulation were required, the motion to sever
and transfer presented evidence of manipulation by Secure Axcess in an attempt to
justify venue in the Eastern District of Texas. Plaintiff relies on a virtual office in
Plano, Texas to attempt to establish its principal place of business is in the Eastern
District, but this was inconsistent with Secure Axcess's corporate filings. *See*
A137-144. Secure Axcess amended its corporate filings to list the Plano office as
its principal place of business only after Defendants pointed out this fact in their
motion to sever and transfer. A242-43, ¶ 10, 286-88. And no potential witness or
executive of Secure Axcess resides in the Eastern District. A71-72, ¶¶ 24-36.

*Rock Research, LLC v. Oracle Corp.*, No. 11-cv-332, 2011 WL 5600363, at *9 (E.D. Tex. Oct. 21, 2011) ("[R]egardless of the Eastern District's participation in the Patent Pilot Program, both Courts are capable of applying patent law appropriately.").

## II.    The Writ Should Issue Because the District Court's Reliance on Damages as a Basis Not to Apply the Customer-Suit Exception Was Clearly Erroneous.

This Court, in a recent order granting a writ of mandamus to correct a clearly erroneous venue decision, acknowledged that the district court on remand needed to analyze the manufacturer's request for severance under *Shifferaw*. *See In re Toyota Motor Corp.*, No. 2014-113, slip op. at 6 (Fed. Cir. Apr. 3, 2014) (citing *Shifferaw*). Under the *Shifferaw* line of cases, the courts consider three factors to determine whether the claims against a manufacturer should be severed and transferred under the customer-suit exception: (1) whether the remaining claims (here, the claims against the Retailer Defendants) are "peripheral" to the severed claims; (2) whether adjudication of the severed claims (here, the infringement claims against Nintendo) would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims. *Shifferaw*, 2010 WL 1064380, at *1 (citing *Toshiba*, 2005 WL 2415960, at *4-7; *Koh*, 250 F. Supp. 2d at 632; *LG Elecs.*, 138 F. Supp. 2d at 584).

20

To avoid applying the customer-suit exception to sever and transfer, the district court relied on a conclusion that the amount of damages against the manufacturer could differ from those against the retailer defendants.  Because damages against retailer defendants could be higher, the court reasoned that neither of the first two *Shifferaw* factors applied.  Specifically, the district court concluded that (1) the claims against the retailer defendants were not peripheral, and (2) severance might not resolve all issues against the retailer defendants.   The district court got it wrong on both factors.

### A.    The District Court Clearly Erred in Finding the Claims Against the Retailer Defendants Were Not Peripheral Based on Damages Issues.

The district court's decision rested in part on an erroneous conclusion that the claims against Retailer Defendants are not peripheral under the first *Shifferaw* factor because the amount of damages against the Retailer Defendants could differ from damages against Nintendo.  This possibility, remote from the threshold liability issues, is not legally sufficient to find that the claims against the Retailer Defendants are not peripheral, and the district court's decision contradicts every other decision on this issue. [4]  The district court reached this decision without any factual or legal analysis into the merits of Plaintiff's damages theories.

---

[4] *Shifferaw*, 2010 WL 1064380, at *3 ("Where a single manufacturer is the only entity in the U.S. who makes and sells the only accused product to Retailer Defendants, a patent infringement claim against a retailer is peripheral to the

As an initial matter, while the district court found Plaintiff should have the opportunity to pursue damages from both Nintendo and the Retailer Defendants (A10), a plaintiff may recover patent infringement damages only once. *See Lugus IP LLC v. Volvo Car Corp.*, No. 11-cv-811, 2012 WL 1715983, at *9 n.1 (E.D. Va. May 15, 2012) (rejecting plaintiff's argument that severance would limit recovery, as a "patentee can collect only one royalty from a patent infringement") (citing *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566 (Fed. Cir. 1993)); *Shifferaw*, 2010 WL 1064380, at *3. As the Supreme Court has made clear, the exhaustion doctrine precludes Secure Axcess from recovering a royalty from both Nintendo and from the Retailer Defendants. *See Bowman v. Monsanto Co.*, 133 S. Ct. 1761, 1766 (2013) (under the exhaustion doctrine, "the initial authorized sale of a patented item terminates all patent rights to that item" and "confers on the purchaser, or any subsequent owner, the right to use [or] sell the thing as he sees fit.") (internal quotations omitted); *see also Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008).

---

claims against the manufacturer"); *Toshiba*, 2005 WL 241960, at *5; *LG Elecs.*, 126 F. Supp. 2d at 421-22 ("[A] patent infringement claim against a distributor is peripheral to a claim against the manufacturer."); *Oplus Techs., Ltd., v. Sears Holding Corp.*, No. 11-cv-8539, 2012 U.S. Dist. LEXIS 83597, at *7-8 (N.D. Ill. June 15, 2012); *Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, No. 11-cv-234, 2012 U.S. Dist. LEXIS 114503, at *21 (E.D. Tex. May 30, 2012); *Siemens Aktiengesellschaft*, 370 F. Supp. at 972.

The district court further concluded that "scope and degree of damages are not common" between Nintendo and the Retailer Defendants. A10. Secure Axcess argued that damages could differ between Nintendo and the Retailers because (1) retail prices are higher than wholesale prices, and (2) the Retailers may sell Nintendo DS and 3DS units with games and accessories. But these arguments turn on detailed factual issues that will be disputed. Moreover, neither Plaintiff nor the district court articulated any legal basis for either argument.

As to the first argument regarding retail prices, neither Plaintiff nor the district court offered any authority to suggest that reasonable royalty damages against Nintendo could not take into account retail prices. *See TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1028 (N.D. Cal. 2013) (". . . Sony lacks any precedential support for the argument that a hypothetically-calculated reasonable royalty must be tied to wholesale prices as opposed to retail prices.").

As to the second argument regarding the Retailers' sale of games and accessories, Plaintiff did not argue, and the district court did not consider, whether awarding damages based on sales of games and accessories is justifiable given that the patent is limited to a method for using a dual screen. *See* A244-274. *See, e.g.*, *Tomita Techs. USA, LLC v. Nintendo Co.*, No. 11-cv-4256, 2013 WL 4101251, at *8 (S.D.N.Y. Aug. 14, 2013) (ordering remittitur where jury's award weighed too heavily the profit Nintendo earned on games for the Nintendo 3DS because "the

23

vast majority of games designed for the 3DS do not require or even utilize the technology covered by the [asserted] patent," and further reasoning that "the [asserted] patent's technology was used only in two features" and thus was "ancillary to the core functionality of the 3DS as a gaming system").

In short, the district court accepted as a foregone conclusion that damages will differ as between Nintendo and the Retailer Defendants when in fact any such distinctions will turn on hotly disputed factual and legal issues that the district court did not even attempt to address. This was error.

It was also erroneous for the district court to rely on the remote *future* possibility of distinctions in damages to decide if the Retailers are peripheral to the liability claims *presently* proceeding against Nintendo. This puts the cart before the horse. As the district court acknowledged, its own "real world experience" is that in most cases plaintiffs seek to collect damages from the manufacturer rather than the retailers, making such potential damages distinctions a moot point. A7-8.

The district court further erred by assuming that severing and transferring the claims against Nintendo would "directly or indirectly foreclose[]" Plaintiff from "pursu[ing] damages from either Nintendo or the Retailer Defendants or both." A10. But Plaintiff could pursue damages against the Retailers in the Eastern District of Texas in the unlikely event it was unable to or chose not to pursue or collect a judgment against Nintendo.

24

The district court's reasoning would undercut the purpose of the customer-suit exception in the severance-and-transfer context. If the fact that an allegedly infringing product may be sold with accessories precludes severance and transfer, every consumer electronics manufacturer can now be forced to litigate in a plaintiff's preferred forum without the protection §1404(a) is intended to provide. Cell phones, for example, are commonly offered for sale with headphones, chargers, and various other accessories. This aspect of the analysis further strengthens the "retailer-suit" immunity that the decision would create.

### B. The District Court Applied the Wrong Test to Determine Whether the Second *Shifferaw* Factor Was Met.

The district court also erred in concluding that the second *Shifferaw* factor was not met because of the mere possibility of differing damages. Under the second factor in *Shifferaw*, whether severance is appropriate depends in part on whether resolving the severed claims would *potentially* resolve the remaining claims against the Retailer Defendants. Instead of applying this well-established rule, however, the district court concluded that this factor was not satisfied because resolving the common infringement and validity issues would not *necessarily* dispose of "the issue of damages based on a reasonable royalty." A11.

The district court's analysis is backward. There can be no dispute that resolving the severed claims against Nintendo would potentially resolve the claims against the Retailer Defendants. Indeed, the district court recognized this: "The

25

Retailer Defendants could only be found liable if the patent infringement claims against Nintendo are resolved in Plaintiff's favor." A11. Further, the Retailer Defendants agreed to be bound by the judgment of the Western District of Washington and now have so stipulated. A2, 476-79. *See LG Elecs.*, 138 F. Supp. 2d at 585 (holding that stipulation to be bound by transferee court decision supported the conclusion that resolving the transferred claims would potentially resolve the claims against peripheral defendants). Additionally, as discussed above, if Nintendo were found liable for patent infringement, and Secure Axcess collected a royalty from Nintendo, the patent exhaustion doctrine would preclude Secure Axcess from also recovering from the Retailer Defendants.

The district court cited no law in support of its analysis, nor did it acknowledge the contrary decisions from other courts, including other judges in the Eastern District of Texas. These cases show the error in the district court's reasoning. For example, the *Shifferaw* decision held that the possibility of enhanced damages against two Retailer Defendants based on willfulness did not undermine the propriety of severing and transferring the claims against the manufacturer. *Shifferaw*, 2010 WL 1064380, at *3 ("Although the plaintiff may have to present evidence of willful infringement against the two Retailer Defendants, this is not a case where severance will create multiple lawsuits that have to be developed in their entirety."); *see also Katz*, 909 F.2d at 1464

26

(customer-suit exception applied even though "there may be additional issues involving the defendants in the [customer suit]," because its "prosecution will be advanced" if patentee prevailed on infringement and validity and would be mooted if the patentee is unsuccessful); *Nintendo*, 544 F. App'x at 941 (in discussing severance of retailer defendant claims, noting that these defendants are not likely to have evidence regarding *liability* issues).

## III. The Writ Should Issue Because the District Court's Decision To Treat the Convenience of Nintendo as a Secondary Factor Was Error.

Based on the district court's conclusion that the first and second *Shifferaw* factors were not met, it declined to consider the third factor—whether transfer to the Western District of Washington is warranted under § 1404(a). Under the district court's analysis, the convenience of the manufacturer need be considered only if severance is warranted under the first two *Shifferaw* factors.

This approach flatly contradicts this Court's direction in the *Nintendo* and *Toyota* cases that a severance and transfer analysis should consider the § 1404(a) convenience factors. This Court has made clear that a district court should take the interests of justice and convenience of the parties under 28 U.S.C. § 1404(a) into account when ruling on a motion to sever and transfer by a "true defendant" (here, Nintendo). *Nintendo*, 544 F. App'x at 941; *accord MGT Gaming, Inc. v. WMS Gaming, Inc.*, --- F. Supp. 2d ---, No. 12-cv-741, 2013 WL 5755247, at *11 (S.D. Miss. Oct. 23, 2013) (ruling on a motion to sever and transfer "will involve a

27

consideration of 'whether the movants have made a clear showing that the ***balance of convenience*** and the interests of justice require the proposed actions.'") (quoting *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 121 (S.D. Tex. 1971)). Similarly, in *Toyota*, this Court directed the district court on remand to conduct the *Shifferaw* severance analysis taking into account the Court's conclusion that "putting [the retailer defendants] aside," the manufacturer "has a clear right to transfer." *In re Toyota*, slip op. at 6.

Importantly, this Court in *Nintendo* faulted the district court because it "never analyzed whether [the] litigation has any meaningful connection to the Eastern District of Texas," *Nintendo*, 544 F. App'x at 941, and chided the district court for "never even mention[ing] § 1404(a) in its order." *Id.* The Court explained that the district court's decision was "contrary to the principle that a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case." *Id.* The Court clearly indicated that whether litigating in the Eastern District of Texas would be consistent with the § 1404(a) convenience factors was an integral part of the severance analysis: "[W]e conclude that the district court erred by not *beginning its analysis* by addressing whether the parties should have been severed *for purposes of facilitating transfer of venue*." *Id.* at 942 (emphasis added). In deciding whether to sever and transfer, the district court must "consider whether fairness *and*

28

*convenience*" warrant severance. *Id.* (emphasis added); *see also Lugus IP*, 2012 WL 1715983, at *3 (whether severance is proper depends in part on whether claims against the manufacturer should be transferred under § 1404(a)).

Contrary to this clear direction, the district court failed to consider whether the claims against Nintendo should be transferred. Mandamus is warranted on this basis alone. Not only did the district court fail to give weight to the § 1404(a) convenience factors as required by this Court, it went further by concluding that the fact that the motion to sever was coupled with a request to transfer venue should "temper[ ]" the general rule requiring severance of claims against retailers from those against a manufacturer. A6. The district court cited no authority nor gave any rationale to support its conclusion that severance is any less appropriate when the claims against the manufacturer are more appropriately tried in another venue. This Court in *Nintendo* underscored that the opposite is true, requiring that the district court "decide [severance] for purposes of fairness and *convenience*." *Nintendo*, 544 F. App'x at 942 (emphasis added); *see also William Gluckin*, 407 F.2d at 180 (customer-suit exception analysis properly took into account the "balanc[e] of convenience of the parties and witnesses").

Courts have consistently severed claims against a manufacturer (the "true defendant") to facilitate the transfer of those claims to a more convenient venue. *See, e.g., Toshiba Corp.*, 2005 WL 2415960, at *8; *LG Elecs.*, 126 F. Supp. 2d at

29

424.  As all these courts recognized, it makes no sense to require the manufacturer to litigate claims against it in an inconvenient forum when the claims against the mere sellers of the accused products can and should be stayed.

Not only did the district court disregard the fact that the Western District of Washington is clearly a more convenient forum in which to try to claims against Nintendo, the district court considered its own perceived expertise in deciding patent cases a factor weighing against severance and transfer.  The court stated that it is "especially true" that application of the customer-suit exception should be "tempered" "where the original court is one experienced in the trial of patent litigation and has developed case management techniques uniquely targeted to the efficient administration of patent litigation."  A6.  Thus, while completely disregarding fundamental principles of fairness and convenience to the parties, the district court erroneously put its thumb on the scale with a factor (its own experience) it believed supported retaining the case.

Because the court erroneously failed to consider fairness and the parties' convenience when ruling on the motion, the writ should be granted.

## CONCLUSION

Petitioners respectfully request that the Court grant this petition for a writ of mandamus, vacate the March 7, 2014 order, and remand with instructions to sever the case against Nintendo and transfer it to the Western District of Washington.

30

Dated: April 11, 2014

Respectfully submitted,

COOLEY LLP

By: _____
                    Stephen R. Smith

*Attorneys for Petitioner Nintendo of
America Inc.*

BAKER & MCKENZIE LLP

By: _____
                    Jay F. Utley

*Attorneys for Petitioners Nintendo of
America Inc., Micro Electronics, Inc.,
Hastings Entertainment, Inc., GameStop
Corp., Best Buy Stores, L.P., BestBuy.com,
LLC, K Mart Corporation, Target
Corporation, and Toys "R" US-Delaware,
Inc.*

31

# CERTIFICATE OF SERVICE

United States Court of Appeals
for the Federal Circuit
Misc. No. _____
------------------------------------------------------------)
IN RE NINTENDO OF AMERICA INC.,
MICRO ELECTRONICS, INC., HASTINGS
ENTERTAINMENT, INC., GAMESTOP CORP.,
BEST BUY STORES, L.P., BESTBUY.COM, LLC,
KMART CORPORATION, TARGET CORPORATION,
AND TOYS "R" US-DELAWARE, INC.,
                              *Petitioners.*
------------------------------------------------------------)

   I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

   Counsel Press was retained by Cooley, LLP, attorneys for Petitioners to print this document.  I am an employee of Counsel Press.

   On the **11th Day of April, 2014**, I served the within **Petition for Writ of Mandamus** upon:

| Counsel | Party Represented |
|---|---|
| **Brian Christopher Banner**<br>King & Spalding LLP<br>401 Congress Avenue, Suite 3200<br>Austin, TX 78701<br>512-457-2000<br>512-457-2100 (fax)<br>bbanner@kslaw.com<br><br>**Sanjeet Kumar Dutta**<br>Steptoe & Johnson LLP<br>1001 Page Mill Road<br>Building 4, Sute 150<br>Palo Alto, CA 94304<br>650-687-9500<br>650-687-9499 (fax)<br>sdutta@steptoe.com | ACCO Brands Corporation |

| Counsel | Party Represented |
|---|---|
| **Ravinder Singh Deol**<br>**Jennifer Klein Ayers**<br>**Steven G. Schortgen**<br>K&L Gates LLP<br>1717 Main Street, Ste 2800<br>Dallas, TX 75201<br>214-939-5976<br>214-939-5849 (fax)<br>ravi.deol@klgates.com<br>jennifer.ayers@klgates.com<br>steve.schortgen@klgates.com | ACCO Brands Corporation<br>Accell Corporation<br>DisplayLink Corp.<br>Hewlett Packard Company<br>IOGear, Inc.<br>LeanCode L.L.C. d/b/a Plugable Technologies<br>LeanCode LLC<br>SIIG, Inc.<br>Sewell Development Corporation<br>Sewell Development Corporation d/b/a Sewell Direct<br>StarTech.com USA L.L.P.<br>Targus, Inc.<br>Trippe Manufacturing Co.<br>Lenovo (Unied States) Inc.<br>1009 Think Place<br>Morrisville, NC 27560<br>Diamond Multimedia, Inc.<br>9650 DeSoto Ave<br>Chatsworth, Ca 91311 |
| **Dan Duncan Davison**<br>Fulbright & Jaworski<br>2200 Ross Avenue<br>Suite 2800<br>Dallas, TX 75201<br>214/855-8000<br>12148558200 (fax)<br>dan.davison@nortonrosefulbright.com | Amazon.com, LLC |
| **Debra Elaine Gunter**<br>Yarbrough Wilcox, PLLC<br>100 E. Ferguson Street<br>Ste 1015<br>Tyler, TX 75702<br>903-595-3111<br>debby@yw-lawfirm.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Nintendo of America, Inc. |

| Counsel | Party Represented |
|---|---|
| **Jay Forrest Utley**<br>Baker & McKenzie<br>2001 Ross Ave<br>Suite 2300<br>Dallas, TX 75201<br>214/978-3036<br>12149783099 (fax)<br>jay.utley@bakermckenzie.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Wal-Mart Stores Texas, LLC<br>Wal-Mart Stores, Inc.<br>Nintendo of America, Inc.<br>Amazon.com, Inc.<br>Nintendo Co., Ltd. |
| **Daniel Joseph O'Connor**<br>**Omar Dawood Galaria**<br>Baker & McKenzie<br>300 E Randolph Drive<br>Chicago, IL 60601<br>312.861.2790<br>312.698.2325 (fax)<br>daniel.oconnor@bakermckenzie.com<br>omar.galaria@bakermckenzie.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Nintendo of America, Inc.<br>Amazon.com, Inc.<br>Nintendo Co., Ltd. |
| **Stefani E Shanberg**<br>Wilson Sonsini Goodrich & Rosati PC<br>650 Page Mill Rd<br>Palo Alto, CA 94304-1050<br>650-565-3645<br>650-493-6811 (fax)<br>sshanberg@wsgr.com | DisplayLink Corp. |

| Counsel | Party Represented |
|---|---|
| **Herbert A Yarbrough, III**<br>Attorney at Law<br>100 E Ferguson<br>Suite 1015<br>Tyler, TX 75702<br>903/595-3111<br>19035950191 (fax)<br>trey@yw-lawfirm.com | Nintendo of America, Inc.<br>Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc. |
| **James Ellis Davis**<br>Ferguson, Braswell & Fraser, PC<br>2500 Dallas Parkway, Suite 260<br>Plano, TX 75093<br>972-378-9111<br>972-378-9115 (fax)<br>jdavis@dallasbusinesslaw.com<br><br>**Carl R Roth**<br>**Brendan Clay Roth**<br>**Amanda Aline Abraham**<br>The Roth Law Firm<br>115 N. Wellington, Suite 200<br>P.O. Box 876<br>Marshall, TX 75671-0876<br>903-935-1665<br>903-935-1797 (fax)<br>cr@rothfirm.com<br>br@rothfirm.com<br>aa@rothfirm.com<br><br>**Kelly James Kubasta**<br>**Casey Lee Griffith**<br>Klemchuk Kubasta, LLP<br>Campbell Centre II,10th Floor<br>8150 North Central Expressway<br>Dallas, TX 75206<br>214/367-6000<br>214/764-6673 (fax)<br>kelly.kubasta@kk-llp.com<br>casey.griffith@kk-llp.com | Secure Axcess, LLC |

| Counsel | Party Represented |
|---------|-------------------|
| **Michael Charles Smith**<br>Siebman Burg Phillips & Smith, LLP<br>P O Box 1556<br>Marshall, TX 75671-1556<br>903-938-8900<br>19727674620 (fax)<br>michaelsmith@siebman.com<br><br>**Rachelle H Thompson**<br>McGuireWoods LLP - Raleigh<br>434 Fayetteville Street, Suite 2600<br>Raleigh, NC 27611<br>919.755.6572<br>919.755.6591 (fax)<br>rthompson@mcguirewoods.com | Wal-Mart Stores Texas, LLC<br>Wal-Mart Stores, Inc. |

**via Express Mail and E-Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Additional, a copy will be sent to these U.S. District Judges:

> HON. RODNEY GILSTRAP, JUDGE
> U.S. DISTRICT COURT FOR THE
> EASTERN DISTRICT OF TEXAS
> Sam B. Hall, Jr. Federal Building
> and United States Courthouse
> 100 East Houston Street
> Marshall, Texas 75670
> PHONE: (903) 935-3868
> FAX: (903) 935-2295

**via Express Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been hand-delivered to the Court on the same date as above.

April 11, 2014

John C. Kruesi, Jr.
Counsel Press

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SECURE AXCESS, LLC, | |
| Plaintiff, | |
| v. | |
| NINTENDO OF AMERICA INC., ET AL. | Case No. 2:13-cv-032-JRG (Lead Case) |
| ACELL CORPORATION, ET AL., | Case No. 2:13-cv-289-JRG |
| Defendants. | JURY TRIAL DEMANDED |

**ORDER GRANTING EXPEDITED BRIEFING SCHEDULE FOR**
**NINTENDO OF AMERICA INC.'S EMERGENCY MOTION TO STAY PROCEEDINGS**

On this day, the Court heard Defendant Nintendo of America Inc.'s ("Nintendo's") request for expedited briefing (the "Request") in connection with its Emergency Motion to Stay Proceedings and Request for Expedited Briefing (the "Motion").  After considering the Request and other matters of record, the Court is of the opinion that the Request is meritorious and should be granted.  It is therefore ORDERED that:

The deadline for filing any response to Nintendo's Motion is April 21, 2014.  Because Nintendo has agreed to waive its right to file a reply brief, there will be no reply or sur-reply briefing for the Motion.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| SECURE AXCESS, LLC, | |
| Plaintiff, | |
| v. | |
| NINTENDO OF AMERICA INC., ET AL. | Case No. 2:13-cv-032-JRG (Lead Case) |
| ACELL CORPORATION, ET AL., | Case No. 2:13-cv-289-JRG |
| Defendants. | JURY TRIAL DEMANDED |

## ORDER GRANTING NINTENDO OF AMERICA INC.'S
## EMERGENCY MOTION TO STAY PROCEEDINGS

On this day, the Court heard Defendant Nintendo of America Inc.'s ("Nintendo's") Emergency Motion to Stay Proceedings and Request for Expedited Briefing (the "Motion"). After considering the Motion and other matters of record, the Court is of the opinion that the Motion is meritorious and should be granted. It is therefore ORDERED that:

Nintendo's Motion is GRANTED, and the Court hereby stays all proceedings in these consolidated cases pending the United States Court of Appeals for the Federal Circuit's resolution of Nintendo's pending petition for writ of mandamus.

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SECURE AXCESS, LLC, | § § § | |
| Plaintiff, | § | |
| | § | CASE NO. 2:13-cv-32-JRG |
| v. | § § | |
| NINTENDO OF AMERICA INC., et al. | § § | **Member Case:** |
| Defendants. | § § § | Case No. 2:13-cv-289-JRG |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants' Joint Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Dkt. No. 61). On January 18, 2013, Secure Axcess, LLC ("Secure Axcess") filed suit against twelve defendants for infringement of United States Patent No. 6,522,309 by making, using, selling, offering for sale, and/or importing certain Nintendo DS systems. This case was consolidated with a member case, *Secure Axcess, LLC v. Accell Corporation, et al.*, Case No. 2:13-cv-289, for all pretrial issues (except venue) on August 2, 2013. (*See* Dkt. No. 72.) Only Nintendo of America Inc. ("Nintendo") has moved to transfer venue.

Nintendo moves to be severed out of the above action, to transfer the case against it to the Western District of Washington (WDWA), and to stay the case here against the remaining eleven defendants pending resolution in WDWA. The Court held a hearing on this motion on February 25, 2014 and heard oral argument from both sides.

1

## I. SEVERANCE

The Court will first evaluate whether severance of Nintendo is proper.

The defendants are self-divided into two groups: Nintendo and eleven Retailer Defendants.[1] The eleven Retailer Defendants sell Nintendo DS systems. There is no dispute that Nintendo alone designs, develops, and manufactures the accused Nintendo DS systems. Based on those facts, Nintendo contends that claims against the Retailer Defendants are peripheral to the claims against Nintendo such that adjudication of the claims against Nintendo will likely dispose of the other claims. Accordingly, Nintendo argues that the customer suit exception applies and severance is appropriate.

In response, Plaintiff does not contest that for the issues of infringement and validity, a resolution against Nintendo would resolve those issues for the Retailer Defendants. This is especially true since the Retailer Defendants represent that they will stipulate to be bound by Nintendo's judgment if the Court grants the present motion. No such stipulation has yet been filed with the Court. However, Plaintiff asserts that its damages claims against the Retailer Defendants are different from its damages claims against Nintendo. Plaintiff argues that due to higher retail prices and the practice of bundling the Nintendo DS systems with video games and other accessories, the Retailer Defendants enjoy the benefits of convoyed sales. As such, Plaintiff argues, its damages claims against the Retailer Defendants are independently significant from its damages claim against Nintendo for the purposes of establishing a reasonable royalty.

---

[1]     The retailers include Micro Electronics, Inc.; Hastings Entertainment, Inc.; Game Stop Corporation; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Best Buy Stores, L.P.; Bestbuy.com, LLC; K Mart Corporation; Target Corporation; Toys "R" US-Delaware, Inc.; and Amazon.com, LLC (collectively, "Retailer Defendants").

### A.     Applicable Law

Neither side asserts that there is misjoinder in this case. That said, the Court finds it instructive to briefly address the standard for when joinder is proper before considering an exception to the rule, commonly referred to as the customer suit exception. The Federal Circuit in *In re EMC I* clarified the test for joinder by holding that "[c]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." 677 F.3d 1351, 1359 (Fed. Cir. 2012). In addition, "joinder is not appropriate where different products or processes are involved." *Id.* "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* Under Rule 20, joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." *Id.* at 1356. Effective September 16, 2011, the Leahy-Smith America Invents Act (AIA) now governs joinder in patent cases. Pursuant to the AIA, joinder of defendants in patent infringement actions is proper only if the allegations of infringement "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and "relat[e] to the making, using, importing into the United States, offering for sale, or selling of *the same accused product or process*." 35 U.S.C. § 299 (emphasis added). Consequently, the key to proper joinder is a set of facts and issues in common among all the defendants in the same suit.

3

However, the commonality of issues and facts among the defendants in making joinder proper must be juxtaposed with exceptions to that rule. Rule 21 permits severance of any claim against a party if the interests of justice so requires. One such instance of severance is often employed in conjunction with the customer suit exception[2]—when so much is found to be in common among the defendants that one defendant becomes merely peripheral to the other. However, the customer suit exception has not always been used as a tool to sever the case against a manufacturer. Rather, it was initially developed as an exception to the first-to-file rule.

Traditionally, the customer suit exception, as the label denotes, arises in patent infringement actions where there are two separate but co-pending suits: an earlier-filed action against customers selling accused devices and a later declaratory judgment action brought by the manufacturer of the accused devices. In such situations, the district court may exercise its discretionary authority to stay the suit as to the customers pending resolution of the manufacture's declaratory judgment action in the manufacturer's chosen forum. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirmed district court's decision to stay the customer suit pending resolution of a declaratory judgment action filed by the manufacturer in a different court); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977) (held the manufacturer's declaratory judgment action in its home forum should take precedence over a customer action in a jurisdiction in which the manufacturer could not be sued); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2nd Cir. 1969) (affirmed district court's decision to restrain customer suit pending final disposition of a declaratory judgment action brought in

---

[2]     Nintendo does not explicitly refer to the term "customer suit exception" in making its motion; rather, it moves for a severance, transfer, and stay pursuant to the three factor test discussed herein. The Court also does not conflate the two issues. Instead, it reviews the genesis of the "customer suit exception" in conjunction with certain instances in which such a set of facts are applied through the three factor test in the course of evaluating a manufacturer defendant's request to sever, transfer, and stay.

another district). This preference for the manufacturer suit to take precedent over the claims against the reseller or distributor of the accused products has its roots in the notion that the manufacturer is the "true defendant" and should bear the burdens of trial. *Codex*, 553 F.2d at 737-38.

However, application of the customer suit exception has more recently been applied in multi-defendant actions where both the manufacturer and retailer are defendants in the same case. In those cases, the customer suit exception can be used as a tool to facilitate transfer of the manufacturer defendant to a venue where suit against the retailer defendants could not have been originally brought. *Toshiba Corp. v. Hynix Semiconductor, Inc.*, 2005 WL 2415960 at *5 (N.D. Tex. Sept. 30, 2005) ("That the Court lacks power to transfer the claims against Millenium and Nova to the Northern District of California does not mean that transfer of the claims against the Hynix Defendants would be improper"); *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003) (ordered severance to facilitate transfer to CDCA when it found retailer defendant MCSC is not subject to *in personam* jurisdiction in California), *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664 (E.D. Va. 1998) ("Given that the action as a whole cannot be transferred to the Northern District of Indiana, the question then presented is whether plaintiff's claim against Thulman may be severed from the claims against the CFM entities so that the latter claims may be transferred to Indiana"). The application to sever one lawsuit into two and transfer the severed case to the manufacturer's desired forum has been argued to achieve the same purpose for which the customer suit exception was originally developed, but when it is driven more by a desire to transfer than achieve efficiencies for the parties and the courts, it must be viewed with a discerning eye.

### B.     Analysis

The purpose of permitting severance by applying the customer suit exception, where joinder is otherwise proper, is premised on traditional notions of fundamental fairness and judicial efficiency. *Koh*, 250 F. Supp. 2d at 632 ("Severance is also appropriate where a defendant is peripherally connected to the action with the consequence (whether intentional or not) that the burdens of trial are increased on other defendants…."); *L.G. Elec.*, 126 F. Supp. 2d at 421 ("Ultimately, the infringement claim against the manufacturer and central distributor is more likely to restore contested property rights nationwide than will enjoining one Virginia merchant from selling infringing products from existing inventory"). As stated in *Codex*:

> At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit.... it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

> *Codex*, 553 F.2d at 737-38 (citations omitted).

This Court does not disagree with the purpose of the customer suit exception in any respect. However, application of the exception should be tempered when severance of the manufacturer is made primarily to facilitate transfer to a forum more convenient to the manufacturer while the case against the remaining defendants, who are outside the jurisdictional reach of that forum, is stayed and left in the hands of the transferor court. This is especially true where the original court is one experienced in the trial of patent litigation and has developed case management techniques uniquely targeted to the efficient administration of patent litigation.[3]

---

[3]     The Eastern District of Texas has one of the most extensive patent dockets in the nation. Its local patent rules, participation in the national Patent Pilot Program, and its recent adoption of alternative Track B case management for appropriate patent cases (*see* General Order 14-3) are evidence of experienced case management techniques.

The original rationale for severing to facilitate transfer was "to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of accentuating the burdens of trial upon a defendant who would otherwise have been entitled to a § 1404(a) transfer." *Corry*, 16 F. Supp. 2d at 664 (citations and quotations omitted). However, rather than being the general rule, this far-reaching remedy should be reserved for that small subset of cases where an attempt to manipulate venue is clear. This is not such a case. This suit involves eleven Retailer Defendants with headquarters located throughout the country.  Two of the Retailer Defendants are headquartered in Texas but neither is actually within the Eastern District of Texas. Defendants have not, nor can they reasonably allege, that the Plaintiff added the Retailer Defendants to this case purely to manipulate venue.

The severance-and-transfer method also does not simplify or streamline all issues in a patent infringement case. Though the "core" questions of infringement and validity may be disposed by litigating the claims against the manufacturer, an evaluation of damages is necessarily a defendant-specific inquiry (as contrasted from the *Katz, Codex* and *Playtex* cases, which were declaratory judgment actions brought by the manufacturer that does not reach the issue of damages and, therefore, did not have this concern).

Several courts have reasoned—correctly—that if a judgment is obtained against the manufacturer and the plaintiff collects on that judgment, the plaintiff may not in turn also collect against the retailer. *Shifferaw v. Emson USA, et al.*, 2010 WL 1064380 at *3 (E.D. Tex. Mar. 18, 2010); *Koh*, at 632-633; *LG Elec. Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000). However, each of those instances presumes that the plaintiff will elect to collect on the judgment only against the manufacturer rather than abstain and pursue their case elsewhere against the retailer defendants. Real world experience shows that such an assumption is very

often accurate. Balanced against the option of reopening their case against the retailers in another district court with little or no knowledge of the transferred case, the plaintiffs are likely to be compelled, as a practical matter, to collect on the judgment they have already obtained at significant cost and over significant time. Such a resolution where the patentee is essentially coerced to recover from the manufacturer rather than other defendants should not be an intended or acceptable consequence of the customer suit exception.

On the other hand, if despite the above coercive pressures, the judgment goes uncollected against the manufacturer while the patentee returns to lift the stay against the retailers in the transferor court, the laudable goal of judicial efficiency and overall economy is significantly frustrated because now the same suit must be adjudicated in two different forums, if only on the damages issue. Accordingly, in an effort to reconcile this undesirable dichotomy of potential outcomes and while staying true to the underlying objective for which the customer suit exception was created, this Court adopts an alternative solution.

### C.    Application

In evaluating a manufacturer defendant's request to sever, transfer, and stay, courts have typically considered three factors: (1) whether the claims against the retailers are peripheral to the claims against the manufacturer; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims. *Shifferaw*, 2010 WL 1064380 at *4 (citing *Toshiba*, 2005 WL 2415960 at *4-7). This Court will first review the facts before it under the first two factors to make an initial determination of whether the customer suit exception should apply to sever the case against the manufacturers in this case. If severance is found appropriate, the Court will consider the § 1404(a) factors as to Nintendo only. If severance if found inappropriate, the Court

8

will evaluate transfer as to the case in its entirety as if all the defendants all moved to transfer venue. Otherwise, the Court will not reach the third factor.[4]

      *1.     Whether the claims against the retailers are peripheral to the claims against the manufacturer*

It is undisputed in this case that Nintendo is the sole manufacturer in the United States of the only accused product, the Nintendo DS systems, and sells it at wholesale to the Retailer Defendants. The Retailer Defendants do not assert that they have any role in the design or manufacture of the Nintendo DS systems. Indeed, Nintendo represents that it is indemnifying and defending all the Retailer Defendants. The Retailer Defendants likely have very little to offer in the way of evidence regarding the underlying technology of the accused devices or the substantive aspects of the infringement case. Therefore, the Retailer Defendants are only peripherally involved in determining the issues of infringement and, to some extent, issues of invalidity.[5] *Shifferaw*, 2010 WL 1064380 at *3. The Court finds that the claims of infringement and validity against the Retailer Defendants are peripheral to Nintendo. However, the same logic cannot be extended to the calculation of damages.

In responding to Defendants' motion, Plaintiff argued that the Retailer Defendants are not peripheral to Nintendo because its damages claims are different. Plaintiff contends that it will

---

[4]     This Court's approach in evaluating these factors is not unique. Courts have consistently treated the third prong as a separate transfer analysis as to the severed defendant after severance is found proper under factors (1) and (2). *See Shifferaw*, 2010 WL 1064380 at *4 ("Because the court has found that severance is proper as to Mishan, the court analyzes whether transfer of the claims against Mishan is appropriate"); *Koh*, 250 F. Supp. 2d at 633 ("Therefore, it is appropriate to consider transfer of the claims against the Microtek defendants and MEI, having in mind severance and stay of the claims against MCSC"); *Toshiba*, 2005 WL 2415960 at *6 and *Corry*, 18 F. Supp. 2d at 666 (found severance was warranted before moving on to the transfer factors).

[5]     Each defendant is entitled to assert the affirmative defense of patent invalidity. However, as the Retailer Defendants are represented by common counsel and have indicated a willingness to be bound by the WDWA's ruling on Nintendo's invalidity defense, the Court will assume for the purposes of this analysis that the Retailer Defendants are only peripherally involved on the issue of invalidity.

obtain a higher recovery from the retailers than the manufacturer because of the higher retail prices and the retailers' practice of bundling the accused systems with video games and other accessories. Plaintiff should have the opportunity to pursue damages from either Nintendo or the Retailer Defendants or both, as it clearly intended by filing this single suit, rather than have those options directly or indirectly foreclosed through the relief Nintendo has requested.

A fundamental tenant of patent law is that a patentee may file suit against *anyone* who without authority makes, uses, offers to sell, or sells any patented invention within the United States during the term of the patent. 35 U.S.C. § 271. The law imposes no arbitrary limit on which private citizen, corporation, or other entity may be the subject of such a suit. This Court is not aware of any authority that forbids a patentee from suing a distributor or retailer of an accused product when the manufacturer resides in the United States. It is also clear that upon a judicial finding for the claimant, the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty. 35 U.S.C. § 284. Damages is no less a core issue in a patent infringement case than the issues of infringement and validity. Therefore, the Court finds that as to the issue of damages, the claims against the Retailer Defendants are *not* peripheral to those of Nintendo.

Where there is not added bundling or other activity that materially alters the damages claims between a manufacturer and its co-defendant retailers; that is to say, where the damages sought by plaintiff are the same among all the defendants, then severance and transfer might not work the same tangible harm on the plaintiff as exists in this case. Cases under those circumstances might be appropriately dealt with by the severance and transfer methodology Nintendo urges here. However, the scope and degree of damages are not common in this case and this Court does not reach the issue of severance and transfer where damages are common.

2. *Whether adjudication of the severed claims would potentially dispose of the remaining claims*

Where adjudication of the claims of infringement and validity against the manufacturer would potentially dispose of those claims against the retailer, time and resources would be wasted if litigation proceeds against all the defendants simultaneously. In this case, there is no dispute that the issues of infringement and validity are common to Nintendo <u>and</u> the Retailer Defendants. The Retailer Defendants could only be found liable if the patent infringement claims against Nintendo are resolved in Plaintiff's favor. However, if the patent is adjudicated as both valid and infringed, then Plaintiff should be allowed to pursue Nintendo and the Retailer Defendants simultaneously for an award of damages, even though it may only collect once. *LG Elec.*, 126 F. Supp. 2d at 422 (citing *Intel v. ULSI*, 995 F.2d 1566, 1568-69 (Fed. Cir. 1993) (holding that patentee can collect only one royalty from patent infringement)). Accordingly, this factor is only satisfied insofar as an adjudication of noninfringement or invalidity would dispose of the claims against the Retailer Defendants. It is not satisfied as to the issue of damages based upon a reasonable royalty.

After studying the traditional application of the customer suit exception and considering the parties' arguments, as well as the facts in this case, the Court agrees with Nintendo that it is the "true defendant" in this case for purposes of determining the issues of infringement and validity. However, rather than engaging in the process of severing, transferring, and then staying the case, the interests of preventing the waste of both time and resources can also be achieved by permitting Nintendo to proceed alone in this Court on infringement and validity while the Retailer Defendants are stayed, conditioned upon their consent to be bound by Nintendo's

judgment.[6] Proceeding in this manner is a fair and equitable solution to otherwise unnecessary piecemeal litigation of one case across multiple district courts. It also works to insure that efficiency and economy, for the parties and the judiciary, are achieved. It prevents the customer suit exception from becoming a means to secure a transfer of venue when such was never a part of its originating purpose and there is no claim of venue manipulation through the addition of the eleven Retailer Defendants.

Accordingly, having considered not only the briefing and argument but also having had an opportunity to judge the nuances of credibility and intent, as is unique to the position of a trial court such as this, the Court in exercising its recognized discretion finds that severance is not an appropriate remedy and the defendants should remain joined "in the interest of avoiding prejudice and delay, ensuring judicial economy, [and] safeguarding principles of fundamental fairness." *In re EMC I*, 677 F.3d at 1360 (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).[7]

---

[6]    The Court has also given much thought to evaluating the bifurcated portion of the infringement/validity case involving Nintendo for transfer in a § 1404(a) analysis. After due consideration, however, the Court believes the fragmented resolution of portions of the same case by multiple courts and multiple judges is not in the best interests of justice.

[7]    This holding is consistent with pending legislation before Congress introduced by Senator Patrick Leahy on November 18, 2013 and designated as the "Patent Transparency and Improvements Act of 2013" (S. 1720). Section 4 of S. 1720 creates a "Customer Stay" provision which states "the court shall grant a motion to stay at least the portion of the action against a covered customer that relates to infringement of a patent involving a covered product or process" when both a customer and manufacturer have been sued for patent infringement, and (i) they both consent in writing to the stay, (ii) the manufacturer is a party to the action involving the same patent relating to the same product, (iii) the customer agrees to be bound by any issues finally decided as to the manufacturer, and (iv) the motion is filed within 120 days after service of the complaint or the date of the first scheduling order, whichever is later. The Court believes the present case is precisely the type of situation contemplated by this proposed legislation.

## II.    TRANSFER

The third factor in evaluating severance and transfer is (3) whether the § 1404(a) factors warrant transfer of the severed claims. Having found severance of Nintendo to be improper, the Court notes that the Defendants did not request transfer of this action as a whole and does not need to reach this third factor. Indeed, the Defendants alleged no facts to show that they can each satisfy the initial question of whether the suit could have originally been brought in WDWA. *Volkswagen I*, 371 F.3d at 203. Based on the record before the Court, a transfer of the entire action would clearly be improper.[8]

## III.    CONCLUSION

For the foregoing reasons and in the interests of justice, the Court **ORDERS** as follows:

The Retailer Defendants shall within fourteen (14) days of this Order file a stipulation agreeing to be bound by the verdict and rulings in this suit against Nintendo on issues of infringement and validity. Conditioned upon receipt of such stipulation, the Court **ORDERS** bifurcation of the liability/validity issues from the issue of damages and **STAYS** the case against the Retailer Defendants as to damages until a disposition of the liability/validity issues has been reached or until subsequent order of this Court.

Defendants' Joint Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Dkt. No. 61) is **DENIED**.

---

[8]    During oral argument, Defendants' counsel indicated that the Defendants would waive any objection to venue and not oppose transferring the entire action to WDWA. However, the threshold inquiry to evaluating transfer under § 1404(a) depends upon whether the plaintiff has a right to sue in that district, not on the "wish or waiver" of a defendant. *Toshiba*, F. Supp. 2d at 4 (citing *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084 (1960)).

The stay previously entered by the Court (Dkt. No. 133) is hereby **LIFTED**. The parties are directed to meet and confer to file a motion to amend the docket control order, if needed, within fourteen (14) days.

**So ORDERED and SIGNED this 7th day of March, 2014.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE

United States Court of Appeals
for the Federal Circuit
Misc. No. 2014-132
---------------------------------------------------------------)
IN RE NINTENDO OF AMERICA INC.,
MICRO ELECTRONICS, INC., HASTINGS
ENTERTAINMENT, INC., GAMESTOP CORP.,
BEST BUY STORES, L.P., BESTBUY.COM, LLC,
KMART CORPORATION, TARGET CORPORATION,
AND TOYS "R" US-DELAWARE, INC.,
                                        *Petitioners*.
---------------------------------------------------------------)

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by COOLEY LLP, attorneys for Petitioners to print this document. I am an employee of Counsel Press.

On **May 6, 2014** counsel for Petitioner has authorized me to electronically file the foregoing **NINTENDO'S EMERGENCY MOTION FOR STAY OF DISTRICT COURT PROCEEDINGS PENDING RULING ON PETITION FOR WRIT OF MANDAMUS** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

| Counsel | Party Represented |
|---|---|
| **James Ellis Davis**<br>Ferguson, Braswell & Fraser, PC<br>2500 Dallas Parkway, Suite 260<br>Plano, TX 75093<br>972-378-9111<br>972-378-9115 (fax)<br>jdavis@dallasbusinesslaw.com | Respondent, Secure Axcess, LLC |

| Counsel | Party Represented |
|---|---|
| **Kelly James Kubasta**<br>**Casey Lee Griffith**<br>Klemchuk Kubasta, LLP<br>Campbell Centre II,10th Floor<br>8150 North Central Expressway<br>Dallas, TX 75206<br>214/367-6000<br>214/764-6673 (fax)<br>kelly.kubasta@kk-llp.com<br>casey.griffith@kk-llp.com | Respondent, Secure Axcess, LLC |
| **Brian Christopher Banner**<br>King & Spalding LLP<br>401 Congress Avenue, Suite 3200<br>Austin, TX 78701<br>512-457-2000<br>512-457-2100 (fax)<br>bbanner@kslaw.com | ACCO Brands Corporation |
| **Sanjeet Kumar Dutta**<br>Steptoe & Johnson LLP<br>1001 Page Mill Road<br>Building 4, Suite 150<br>Palo Alto, CA 94304<br>650-687-9500<br>650-687-9499 (fax)<br>sdutta@steptoe.com | ACCO Brands Corporation |
| **Stefani E Shanberg**<br>Wilson Sonsini Goodrich & Rosati PC<br>650 Page Mill Rd<br>Palo Alto, CA 94304-1050<br>650-565-3645<br>650-493-6811 (fax)<br>sshanberg@wsgr.com | DisplayLink Corp. |

| Counsel | Party Represented |
|---|---|
| **Ravinder Singh Deol**<br>**Jennifer Klein Ayers**<br>**Steven G. Schortgen**<br>K&L Gates LLP<br>1717 Main Street, Ste 2800<br>Dallas, TX 75201<br>214-939-5976<br>214-939-5849 (fax)<br>ravi.deol@klgates.com<br>jennifer.ayers@klgates.com | ACCO Brands Corporation,<br>Accell Corporation,<br>DisplayLink Corp.,<br>Hewlett Packard Company,<br>IOGear, Inc., LeanCode L.L.C.<br>d/b/a Plugable Technologies,<br>LeanCode LLC, SIIG, Inc.,<br>Sewell Development<br>Corporation, Sewell<br>Development Corporation d/b/a<br>Sewell Direct, StarTech.com<br>USA L.L.P., Targus, Inc.,<br>Trippe Manufacturing Co.<br>Lenovo (Unied States) Inc.,<br>1009 Think Place<br>Morrisville, NC 27560<br>Diamond Multimedia, Inc.,<br>9650 DeSoto Ave<br>Chatsworth, Ca 91311 |
| **Dan Duncan Davison**<br>Fulbright & Jaworski<br>2200 Ross Avenue<br>Suite 2800<br>Dallas, TX 75201<br>214/855-8000<br>12148558200 (fax)<br>dan.davison@nortonrosefulbright.com | Amazon.com, LLC |
| **Debra Elaine Gunter**<br>Yarbrough Wilcox, PLLC<br>100 E. Ferguson Street<br>Ste 1015<br>Tyler, TX 75702<br>903-595-3111<br>debby@yw-lawfirm.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Nintendo of America, Inc. |

| Counsel | Party Represented |
|---|---|
| **Jay Forrest Utley**<br>Baker & McKenzie<br>2001 Ross Ave<br>Suite 2300<br>Dallas, TX 75201<br>214/978-3036<br>214/9783099 (fax)<br>Jay.Utley@bakermckenzie.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Wal-Mart Stores Texas, LLC<br>Wal-Mart Stores, Inc.<br>Nintendo of America, Inc.<br>Amazon.com, Inc.<br>Nintendo Co., Ltd. |
| **Daniel Joseph O'Connor**<br>**Omar Dawood Galaria**<br>Baker & McKenzie<br>300 E Randolph Drive<br>Chicago, IL 60601<br>312.861.2790<br>312.698.2325 (fax)<br>daniel.oconnor@bakermckenzie.com<br>omar.galaria@bakermckenzie.com | Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc.<br>Nintendo of America, Inc.<br>Amazon.com, Inc.<br>Nintendo Co., Ltd. |
| **Herbert A Yarbrough, III**<br>Attorney at Law<br>100 E Ferguson<br>Suite 1015<br>Tyler, TX 75702<br>903/595-3111<br>19035950191 (fax)<br>trey@yw-lawfirm.com | Nintendo of America, Inc.<br>Amazon.com, LLC<br>Best Buy Stores, L.P.<br>BestBuy.com, LLC<br>Game Stop Corporation<br>Hastings Entertainment, Inc.<br>K mart Corporation<br>Micro Electronics, Inc.<br>Target Corporation<br>Toys "R" Us-Delaware, Inc. |

| Counsel | Party Represented |
|---|---|
| **Michael Charles Smith**<br>Siebman Burg Phillips & Smith, LLP<br>P O Box 1556<br>Marshall, TX 75671-1556<br>903-938-8900<br>19727674620 (fax)<br>michaelsmith@siebman.com<br><br>**Rachelle H Thompson**<br>McGuireWoods LLP - Raleigh<br>434 Fayetteville Street, Suite 2600<br>Raleigh, NC 27611<br>919.755.6572<br>919.755.6591 (fax)<br>rthompson@mcguirewoods.com | Wal-Mart Stores Texas, LLC<br>Wal-Mart Stores, Inc. |

Additionally, copies of each will also be served on the above counsel, **via email and U.S. Mail** by depositing them, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service. Any counsel for Amicus Curiae registered as CM/ECF users at the time of this filing will be served only via CM/ECF notice.

Additional, a copy will be sent **via Priority Mail** to these U.S. District Judges:

HON. RODNEY GILSTRAP, JUDGE
U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
Sam B. Hall, Jr. Federal Building
and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
PHONE: (903) 935-3868
FAX: (903) 935-2295

May 6, 2014

/s/ John C. Kruesi, Jr.
John C. Kruesi, Jr.
Counsel Press

Certificate of Service Page 5